On the Merits, argued October 18, decided November 7, 1911.

## KINGSLEY v. KRESSLY.

[111 Pac. 385: 118 Pac. 678.]

TIME—COMPUTATION—EXCLUDING FIRST DAY—PROCEEDINGS FOR TRANS-
FER OF CAUSE.

1. Where the undertaking on appeal was filed on July, 25, 1910, and the time for excepting to the sufficiency of the sureties expired July 30, 1910, a transcript filed August 30, 1910, was within the time allowed by law.

VENDOR AND PURCHASER—OPTIONS.

2. A written contract between plaintiff and defendant gave defendant, in consideration of $2,000, the exclusive privilege, until April 15, 1909, of purchasing certain land at an agreed price, and provided that if he did not, on or before such date, pay a sum named the agreement should become void, and plaintiff should retain the $2,000; and that until payment by defendant of a such sum the contract should constitute an option only; and that after such payment had been made defendant agreed to purchase the property upon the terms provided. *Held*, that the contract was only an option until April 15, 1909, when defendant was to accept the option by payment of the sum named.

VENDOR AND PURCHASER—OPTIONS.

3. Plaintiff was bound during the time specified by his option to defendant to purchase land on or before a certain date, in consideration of a certain sum, even though such sum was to constitute a part of the purchase price, if the sale was completed.

FRAUDS, STATUTE OF—MODIFICATION OF CONTRACT—SALE OF LAND.

4. While an agreement, required by the statute of frauds to be in writing, such as a contract to sell land, cannot be modified as to the time of performance by an oral executory contract, equity will not permit the statute to be used to perpetrate a fraud, so that if the vendee is induced by a subsequent oral agreement for an extension of time of payment to make a default in payment as called for by the written agreement, the vendor cannot invoke the statute in equity to make the oral agreement invalid.

VENDOR AND PURCHASER—OPTIONS—EXPIRATION—EVIDENCE.

5. Evidence *held* to show that an option to purchase land had expired by its terms.

VENDOR AND PURCHASER—OPTION CONTRACT—BREACH.

6. Where the holders of an option to purchase land knew when the option was executed that plaintiff had then only a bond for a deed, and the option provided that at the time the deed was executed, which was to be when a certain amount of the price had been paid upon acceptance of the option, the seller should furnish an abstract showing a fee-simple title, the option holder could not claim that the seller breached the option by his inability to give a fee-simple title; the option holder having never made any payments as called for by the option, so as to convert it into a binding contract.

VENDOR AND PURCHASER—OPTION CONTRACTS—RIGHT TO POSSESSION.

7. Where an option contract permitted the option holders to enter and take possession upon the execution of a contract, and retain possession, so long as they complied with the conditions of the option, their possession thereunder was a mere license until they performed the option contract, so that their failure to make the first payment thereunder operated as a surrender of their possession.

QUIETING TITLE—RIGHT OF ACTION—POSSESSION IN ANOTHER.

8. Under Section 516, B. & C. Comp., permitting one claiming an interest in realty, not in the actual possession of another, to maintain a suit in equity against one claiming an interest therein adverse to him, to determine such claim, if plaintiff's remedy by ejectment is inadequate, he may maintain a suit under the statute, irrespective of whether he has possession, so that the fact that railroad tracks and a right of way crossed the premises, title to which is sought to be quieted against defendant's claim under an option to purchase, which had expired by limitation, would not bar the action, since an action in ejectment against the railroad company would not determine defendant's claim lien, so that plaintiff has no legal remedy as against defendant.

———

Decided November 1, 1910.

ON MOTION TO DISMISS.

[111 Pac. 385.]

From Multnomah: CALVIN U. GANTENBEIN, Judge.

This is a suit by E. D. Kingsley against H. J. Kressly and Thos. L. Greenough. From a decree in favor of plaintiff, defendants appeal. Respondent files motion to dismiss appeal.                MOTION DENIED.

*Messrs. Wilbur & Spencer* for the motion.

*Mr. Arthur C. Emmons* and *Mr. A. King Wilson*, contra.

MR. JUSTICE EAKIN delivered the opinion of the court.

The undertaking on appeal was filed on July 25, 1910, and the time for excepting to the sufficiency of the sureties expired July 30, 1910, and the transcript was filed August 30, 1910, which is within the time allowed by law, as held in *Booth* v. *Scriber*, 48 Or. 561 (87 Pac. 887: 90 Pac. 1002) ; *McCabe-Duprey Tanning Co.* v. *Eubanks*, 57 Or. 44 (102 Pac. 795.)    The motion to dismiss is denied.

DENIED.

———

Argued October 18, decided November 7, 1911.

ON THE MERITS.
[118 Pac. 678.]

Statement by MR. CHIEF JUSTICE EAKIN.

This is a suit by E. D. Kingsley against H. J. Kressly and Thos J. Greenough, to remove a cloud from the title to real estate arising by reason of a written option to purchase real estate given by plaintiff to defendant Kressly.  The material parts of the writing are as follows :

"Witnesseth, that the party of the first part, for and in consideration of the sum of two thousand dollars ($2,000.00), the receipt of which is hereby acknowledged, does give and grant to the party of the second part, until April 15, 1909, the sole, exclusive and irrevocable right and privilege of purchasing that certain tract or parcel of land situate, lying and being in the County of Multnomah, State of Oregon, and more particularly bounded and described in that certain deed from Rosanna Richards et al, to A. L. Mills, recorded in the Records of Deeds of Multnomah County, State of Oregon, in Book 336, at page 463, at and for the agreed price of one hundred and thirty-five thousand dollars ($135,000.00) to be paid, if the said party of the second part shall elect to purchase hereunder, in the manner and form as follows, to-wit: Two thousand dollars ($2,000.00) on the execution of this instrument, the receipt of which is hereby acknowl-

edged; eighteen thousand dollars ($18,000.00) on or before April 15, 1909; the further sum of ten thousand dollars ($10,000.00) payable on or before July 15, 1909; the further sum of ten thousand dollars ($10,000.00) payable on or before October 15, 1909; the further sum of ten thousand dollars ($10,000.00) on or before January 15, 1910; the further sum of twenty thousand dollars ($20,000.00) on or before January 15, 1911; the further sum of sixty-five thousand dollars ($65,000.00) on or before April 15, 1914. All payments made after April 15, 1909, shall bear six (6) per cent. interest payable semi-annually, dated from April 15, 1909, and all payments of principal and interest shall be made at the First National Bank of Portland, Oregon.

"Upon the payment of fifty thousand dollars ($50,000.00) on account of principal, together with the interest thereon, then due, the party of the first part shall execute, together with his wife, to the party of the second part a deed of warranty against the acts of said grantors of the premises above described, and the party of the second part shall execute to the party of the first part a first mortgage on that portion of the premises lying between the County Road and Willamette River, securing the payment of two promissory notes, one of which shall be for twenty thousand dollars ($20,000.00), due on or before January 15, 1911; and the other for sixty-five thousand dollars ($65,000.00), due on or before April 15, 1914, both payable at the First National Bank of Portland, Oregon, and bearing six (6) per cent interest, payable semi-annually, which notes and mortgages shall constitute the last two payments under the contract above mentioned.

"In case the said party of the second part shall not, on or before April 15, 1909, pay the sum of eighteen thousand dollars ($18,000.00) as above specified, then this agreement shall thereupon become at once null and void, and the party of the first part may and shall retain to his own use and benefit the said sum of two thousand dollars ($2,000.00) and until the payment of said sum of eighteen thousand dollars ($18,000.00) this contract shall constitute an option, only, to purchase on the part of the party of the second part. And after the said sum of

eighteen thousand dollars ($18,000.00) has been paid, the party of the second part hereby covenants and agrees to purchase said real property upon the terms and conditions above mentioned.

"It is further mutually understood and agreed by and between the parties hereto that the party of the first part shall furnish an abstract of title showing he has a fee simple title, free from all encumbrances, except the right of way of the Northern Pacific Railroad Company, and the County Road, in and to the above-described premises, at the date of the execution of the deed above mentioned, to the party of the second part. And if said abstract of title shall fail to show such fee simple title in the party of the first part on the date above mentioned, and if said party of the first part shall not within a reasonable time thereafter obtain such fee simple title in himself, he shall return to the party of the second part, the sum of two thousand dollars ($2,000.00) deposited as aforesaid, and this agreement shall thereupon become at once null and void.

"It is further mutually understood and agreed by and between the parties hereto that the party of the second part may enter into and have possession of the above described premises upon the execution of this agreement and retain possession thereof so long as he complies with the conditions above mentioned."

Plaintiff alleges that defendant Kressly failed and neglected to make the payment of $18,000 on April 15, 1909, and on that day notified him that he was unable to do so, and abandoned the option. Defendants for answer, besides certain denials, allege that plaintiff failed to furnish an abstract showing that he had a fee simple title to the land; and, as a second defense, that prior to April 15, 1909, the time of payment was, by mutual consent, so modified and changed as not to require the payment of the $18,000 on the 15th of April; and that the defendants, within the time agreed tendered to plaintiff all payments which were to be made under the modified contract. Defendants, on May 28, 1909, had the option

recorded, and thereafter have been claiming some interest in the premises thereunder.

Upon the trial findings were made and a decree rendered in favor of plaintiff for the relief asked. Defendants appeal.                                          AFFIRMED.

For appellants there was a brief over the names of *Mr. Roscoe C. Nelson, Mr. Arthur C. Emmons, Messrs. Wilson & Neal,* and *Mr. W. J. Makelim,* with oral arguments by *Mr. A. King Wilson* and *Mr. Nelson.*

For respondent there was a brief over the names of *Messrs. Wilbur & Spencer, Mr. Wilfred E. Farrell* and *Mr. William T. Muir,* with oral arguments by *Mr. Schuyler C. Spencer* and *Mr. Farrell.*

Opinion by MR. CHIEF JUSTICE EAKIN.

1, 2. The contract by its terms is an option. For the consideration of $2,000 paid, plaintiff granted to defendants, until April 15, 1909, the exclusive and irrevocable privilege to purchase the land. It was unilateral until accepted by defendants on that day. Until then they were in no way obligated to buy, and it was not a contract of sale. Plaintiff was bound by his offer, during the time specified, that he was not at liberty to withdraw it; there being a consideration paid for it. It is true the $2,000 was to constitute a part of the purchase price, if the sale was completed, but that sum was plaintiff's money in either case. But, to have the option culminate in a contract of sale, defendants must have accepted it within the time specified, and the acceptance was to be evidenced by the payment of the $18,000 on April 15, 1909. *House* v. *Jackson,* 24 Or. 89 (32 Pac. 1027) ; *Clarno* v. *Grayson,* 30 Or. 111: 120 (46 Pac. 426) ; *Friendly* v. *Elwert,* 57 Or. 599 (112 Pac. 1085). Until that should be done, defendants would acquire no right in the property, except that if they entered into possession they would not be tres-

passers while they complied with the conditions of the agreement. Their right to possession was no more than a contingent license.

3. As to the effect of a subsequent parol modification of an agreement of the sale of real estate, the rule is that an agreement, required by the statute of frauds to be in writing, cannot be subsequently changed or modified as to the time of performance by any oral executory contract. There is a full discussion of this question in *Neppach* v. *Ore. & Calif. R. Co.*, 46 Or. 374 (80 Pac. 482), and in the note to that case in 7 Am. & Eng. Ann. Cas. 1041, from which the conclusion is irresistible that such a subsequent parol modification is void. To hold otherwise would be to open the door to the very frauds the statute of frauds was intended to prevent. However, there is an exception to that rule to the effect that equity will not permit the statute of frauds to be used to perpetrate a fraud, namely: If there was a subsequent oral agreement for an extension of time of payment, acted upon by the vendee, equity will not permit the vendor thus to induce the vendee to make a default in payment as provided by the written agreement, and then invoke the statute. This was the point upon which the case of *Neppach* v. *Oregon & Cal. R. Co.* was decided. Mr. Justice BEAN in that case, says that by the settled doctrine in England "that an agreement, required by the statute of frauds to be in writing, cannot be subsequently changed or modified as to the time of performance, or in any other respect, by an oral executory contract. * * In this country * * probably a majority (of states) deny the validity of such an agreement, unless acted upon by the parties, and hold that a part of a contract, required by the statute to be in writing, cannot rest in parol. And proceeds to hold that the case before the court was within the exception named, viz., a subsequent extension therein had been orally agreed upon at the request of and for the benefit of the vendor,

although the vendees were ready to pay within the time mentioned in the written contract. In the note to that case, referred to, many cases are cited, supporting the conclusion of Mr. Justice BEAN, where it is said:

"Evidence of an oral agreement altering the terms of a written contract within the statute of frauds, while not evidence of an enforceable agreement, is admissible to establish a waiver of the terms of the written contract, where it appears that the contract, as altered, has been acted upon by the party offering the evidence."

Other cases arrive at the same result, but place it on the ground of an equitable estoppel, that he who causes anything to be done, or prevents it from being done, shall not avail himself of the performance or nonperformance which he himself has occasioned. Others hold that the statute of frauds may not be invoked to perpetrate a fraud. This is upon the theory that it would be a fraud upon the vendee—he having been induced to let the time of payment go by, by oral promise of extension of the time —to permit the statute of frauds thereafter to be invoked. But, where the situation of the parties is not altered in reliance upon a subsequent oral agreement, such agreement is within the statute, and must be in writing.

4. Applying this rule to the facts in this case, the time of the option was until April 15th, when, if the $18,000 was not paid, "then this agreement shall thereupon become at once null and void, and the party of the first part shall retain to his own use and benefit the said sum of $2,000, and until the payment of said sum of $18,000 this contract shall constitute an option only to purchase on the part of the party of the second part. And after the said sum of $18,000 has been paid, the party of the second part hereby covenants and agrees to purchase said real property upon the terms and conditions above mentioned." By the evidence of plaintiff, Greenough had a talk with plaintiff on April 14th, at which time Greenough

was notified that the $18,000 must be paid on the 15th, or the option would lapse; that on the 15th Kressly, by the direction of Greenough, reported to plaintiff that they could not meet the terms of the contract, and that they would forfeit the $2,000 and drop the matter. Upon these facts there is no controversy. Later, on the 15th, Connell, representing only himself, saw plaintiff, and asked for an exclusive option to sell until the following Monday, which plaintiff refused, but told him if he could find a buyer to bring him around, and he would talk it over. Connell testified to the same conversation, and said that plaintiff told him the deal had fallen through, but that he would give him another chance; that plaintiff made one or two propositions for a new deal, which he told him he was not in a condition to consider at that time, and would see him in a few days. Thus it is plain that the option expired by its own terms on the 15th of April, and there was not at any time an agreement to sell between plaintiff and defendants.

There was considerable testimony introduced as to subsequent attempts to renew or reinstate the option on new conditions, but it does not convince us that there was any new agreement made, but if made it was not in writing, and therefore void under the statute of frauds.

The matter urged by the defendants, to the effect that plaintiff was not able to perform his part of the contract, and therefore could not forfeit the agreement of sale, is based upon the theory that the agreement was an executory contract of sale. But it was not such, and could only have been made such by the payment of $18,000 on the 15th of April.

5. As to the suggestion that plaintiff could not give a title, it is admitted that defendants had an abstract of title on the day of signing the option, from which they had notice that plaintiff had only a bond for a deed. At least, it could not have shown more than this, and an

abstract showing the fee simple title in the plaintiff was not due by the terms of the option until the time the deed was to be executed to the defendants, which was January 15, 1910.

6. As to the possession, the contract provided that the defendants "may enter into and have possession of the above-described premises upon the execution of this agreement and retain possession thereof so long as he complies with the conditions above mentioned." It does not appear that defendant entered upon the possession thereunder, other than that one of the defendants unloaded some tools upon the premises at one point. The right of possession by defendants, if they had taken it, was but a mere license until they performed the terms of the contract, and on April 15th, when they gave plaintiff notice that they could not make the first payment, they ended their relation to the property and surrendered their possession, if they had any.

7. The possession of its grade and track across the premises by the United Railway is not involved here. It is not pleaded, and it is not such a possession as can defeat plaintiff's remedy to quiet title against defendants, and does not defeat the jurisdiction of the court in this case. If it was a trespasser on the land, or has some right under the plaintiff, the decree in this case does not affect it, and its possession was only a small fraction of the premises involved here. In a suit to quiet title, the requirement of the statute (section 516) that the premises shall not be in the actual possession of another is that, if defendant is in possession, plaintiff has a remedy at law by ejectment, and that action would determine defendant's right. If, however, that remedy is inadequate to grant the relief desired, equity will entertain jurisdiction, even if plaintiff is not in possession. *State ex rel.* v. *Warner Valley Stock Co.,* 56 Or. 283: 300 (106 Pac. 780: 108 Pac. 861), 17 Ency. Pl. & Pr. 309:311. In *Alton Marine Fire Insurance Co.* v. *Buckmaster,* 13 Ill. 201: 205, it is stated that:

"The reason why the party out of possession cannot maintain such a bill is that he may bring an action at law, to test his title, which ordinarily a party in possession cannot do. Such a bill is only entertained by a court of equity because the party is not in a position to force the holder of, or one claiming to defend under, the adverse title into a court of law to contest its validity; and this, as a general rule, is a test to which a court of equity will look to determine whether the necessity of the case requires its interference."

And this statement of the reason for the rule is quoted with approval in *Comstock* v. *Henneberry,* 66 Ill. 214, and *Apperson & Co.* v. *Ford,* 23 Ark. 746, 757. Any possession the United Railways may have, whether by way of an easement or wrongfully, cannot be determined in an ejectment action against defendants, nor can ejectment against the United Railways determine the rights of the defendants, and therefore the plaintiff has no legal remedy against the defendants, and equity has jurisdiction in this form of suit.

The judgment and decree of the lower court is affirmed.

AFFIRMED.