Argued at Pendleton May 6; affirmed September 4; opinion cor-
rected and rehearing denied October 21, 1930

# BROWN *v.* LAIRD ET AL.

(291 P. 352)

*H. E. Dixon* and *E. R. Ringo,* both of La Grande, for appellants.

*J. S. Hodgin* of La Grande for respondent.

BEAN, J. ■ Matthew Wells Mitchell and Matilda J. Mitchell were married April 19, 1893, at which time Mr. Mitchell, a widower, was residing on a farm near Cove, Oregon. The plaintiff is a daughter of Mr. Mitchell by a former marriage, and Minnette Sentner is the daughter of Mrs. Mitchell by a former marriage. Both Mrs. Brown and Mrs. Sentner were adults and married at the time of the marriage of Mr. and Mrs. Mitchell. At that time Mr. Mitchell was possessed of considerable real estate, part of which was good tillable land and the remainder was hill or pasture land. The evidence does not definitely disclose the financial condition of Mrs. Mitchell at the time of the marriage. She had been operating a rooming house in Portland and engaged in the real estate business. She was a business woman of more than ordinary ability. She was possessed of residence property in Tacoma, and subsequently inherited $2,000 from her parents. Mrs. Mitchell was 12 years younger than her husband and died January 16, 1928. Mr. Mitchell died July 27, 1928. During the hard times of the nineties he was financially involved, but afterwards his affairs appear to have been straightened out and he possessed property of the value of some $20,000 or $30,000. Mr. Mitchell's health was failing from about 1916 to 1918. He had the palsy, and commencing about 1920, for quite a long time, he had a physical and mental breakdown. At times he did not recognize his friends and relatives, and gradually grew worse until about 1924 when he became bedfast, and as for business transactions he

was practically *non compos mentis*. Mr. Mitchell had been an active, intelligent business farmer and school teacher. When his health and strength failed he turned the management of his affairs over to his wife. He gradually became accustomed to accede to any business proposition that his wife made. It required but little effort for Mrs. Mitchell to control the transaction involved in regard to the power of attorney, which diverted the property from Mr. Mitchell's estate and prevented the culmination of the bequest made by Mr. Mitchell to his only daughter. The evidence shows that Mr. Mitchell did not intend to authorize an act that would practically disinherit his daughter, who came to his bedside during his illness, after the death of her stepmother, and watched over and cared for him. The power of attorney does not show such an intention. The intention of the donor or grantor is to be gathered from the instrument of creation: 49 C. J., p. 1260, § 34, and p. 1262, § 40; *Frank v. Frank,* 305 Ill. 181 (137 N. E. 151).

On January 6, 1925, Mr. Mitchell gave to his wife a power of attorney "to lease, let, demise, bargain, sell, remise, release, convey, mortgage and hypothecate lands, tenements and hereditaments upon such terms and conditions and under such conveyances as she shall think fit. To sign, seal, execute, deliver and acknowledge such deeds, leases and assignments of leases," and other instruments in writing as may be necessary or proper in the premises, "including lands I now own within Union county, Oregon. Including also the right to sign my name to, upon any mortgage, executed by my wife upon property owned by her in Union county, Oregon, to release curtesy estate" and granting the usual general powers. At the time of the execution of

the power of attorney it was contemplated by Mrs. Mitchell to mortgage the property standing in her name.

Mr. George Currey, a real estate dealer of La Grande, was negotiating a deal for a swimming pool property at the town of Cove, Union county, for one Martin Borkgren for $18,000, to Matilda Mitchell and Minnette Sentner, and he had several consultations with these two women to promote the deal. In attempting to obtain a loan to make a part payment on the swimming pool property, it was arranged between the three that Currey should prepare a power of attorney and bring it over to Cove and get Mr. Mitchell's signature thereto, and to use this power of attorney in carrying out the swimming pool deal. Mr. Mitchell was not approached or consulted, the real estate dealer did not see him until the power of attorney was prepared, and he was wheeled out from his bedroom into another room and then told by Mrs. Mitchell that Mr. Currey was there with papers to sign, or power of attorney. When asked if he "was ready to sign" he answered "Yes," which appears to be the only thing Mr. Mitchell said regarding the transaction. The power of attorney was read over to him, handed to him and his hand guided in making his mark. Mr. Currey seemed to have taken it for granted that it was a family affair and was all well understood, and he had but little conversation with Mr. Mitchell.

On December 7, 1926, under the assumed authority of this power of attorney, Mrs. Mitchell, individually and as attorney-in-fact for Matthew Wells Mitchell, executed a deed to Minnette Sentner, her daughter by a former husband, attempting to convey to her the last piece of property that stood in the name of Mr.

Mitchell and his wife. It appears from the record that the power of attorney was not given for such a purpose. The consideration of the deed was $1 and other valuable considerations, which is claimed to be the assistance rendered by Mrs. Sentner in the care of her stepfather, Mr. Mitchell. Mrs. Sentner had charge of the swimming pool property and went back and forth from there to her stepfather's and her mother's residence, and assisted in the work about the house and in caring for her stepfather. She had made her home, together with her daughter, with the Mitchells most of the time since about 1915. At times while she was married she lived elsewhere. During the time she lived with the Mitchells she was a member of the family. There was no agreement made or claimed to have been made to pay her wages for assisting in the work about the Mitchell home. The conveyance of the land to Mrs. Sentner was, to all intents and purposes, a gift, and was contrary to the provisions of the will executed by Mr. Mitchell November 11, 1914, bequeathing to his daughter, Lillie F. Brown, a legacy of $6,000. The conveyance of this land to Mrs. Sentner rendered this provision of the will practically nugatory, as there was no property or funds with which to pay the same.

We quote from 49 C. J., p. 1271, § 70: "Gifts. Power to sell does not include authority to make a gift of the subject-matter, or convey it without consideration, and such a transfer is void."

■ The circuit court, after a careful and painstaking hearing of the case, found that Mr. Mitchell did not fully realize what he was doing at the time the power of attorney was executed. The trial court also found, in substance, that the power of attorney to sell and

mortgage lands did not authorize the donee of the power to make a gift to Mr. Mitchell's stepdaughter. We concur in these findings.

■ Whatever the donee of the power does must be done for the benefit of the donor, and when the agent is authorized to make a sale of certain property, the word "sale" does not mean the same that it does in the ordinary acceptation. It means the transfer or passing of title in exchange for money, preferably paid in cash, or for some future credit arrangement, such as a note, or the like. See *Coulter v. Portland Trust Co.,* 20 Or. 469 (26 P. 565, 27 P. 266), which practically settles the question in this case. See also *Wade v. Northrup,* 70 Or. 569 (140 P. 451). The Coulter case involves a power of attorney authorizing the buying, selling, transferring or mortgaging real estate, and a deed and transfer executed under the authority of the power of attorney. We quote from that case as follows:

"in consideration of $1, to us paid by W. G. Jenne, and for the further consideration that the said W. G. Jenne hereby assumes the responsibility of providing a suitable and comfortable home for and of properly clothing Nellie Palmer, the daughter of said Howard H. Palmer and R. A. Palmer, until the said Nellie Palmer (now nearly three years of age) shall reach the age of 18 years, do hereby grant, bargain, sell, and convey  *  *  *."

"The only question that we need to consider is the extent of the agent's power conferred by the words 'selling' or 'transferring'."

The court then refers to a Texas case: *Gouldy v. Metcalf,* 75 Tex. 455 (12 S. W. 830, 16 Am. St. Rep. 912).

"In that case the attorney was authorized by the power 'to buy, sell, or exchange property; to receive and receipt for money; to sell and dispose of property;

to give bills of sale thereto, or to sell and transfer real estate and to execute deeds thereto; or to do and perform any lawful act in, or about, or concerning my (the principal's) business, as fully and completely as if I were personally present; and the court held that this did not authorize the attorneys to execute an assignment of the principal's property for the benefit of his creditors. In passing upon this question, the court said: 'The language used in the grant of general power is certainly very comprehensive, but the established rule of construction limits the authority derived by the general grant of power to the acts authorized by the language employed in granting the special powers'."

In the construction of an instrument conferring the power to convey real estate, the intention of the donor of the power is the great principle that governs, and, in furtherance of the object in view, the courts will vary the form of executing the power, and, as the case may require, either enlarge a limited to a general power, or cut down a general power to a particular purpose, where the intent is apparent: 21 R. C. L., p. 800, § 32.

In the power of attorney in question, the language of the instrument plainly indicates that it was not the intent of the donor to make a gift of the property, but the language authorizes a sale. If Mr. Mitchell had been competent to execute an instrument authorizing the conveyance of real estate, it would not have been necessary at the time of the execution of the power of attorney or at the time of the execution of the deed to Mrs. Sentner, to take a roundabout course,—the route of power of attorney and then a deed, in order to convey the property. If he had desired such a conveyance and had been competent to make the same, he could have made the deed direct to his stepdaughter. Such

an act, however, seemed wholly foreign to his will, and was plainly in conflict therewith, as expressed in his last will and testament. No doubt Mrs. Mitchell thought, as she had lived happily with Mr. Mitchell for quite a long time and her own daughter was very close to her and had been a member of the family and assisted in his care, that it would be right for her daughter to have the property. Mrs. Mitchell, however, was not the person to decide the question. Mr. Mitchell's own daughter by a former wife had the same right and the same demand upon his patrimony as Mrs. Sentner did upon her mother. Mrs. Sentner's deed was not recorded until after the death of her mother. She excuses this neglect by saying that she was having trouble with her then husband and did not want the title of record on that account. Considerable time elapsed after her divorce from her husband before she authorized the deed to be recorded. It was in the keeping of Mr. Dixon, who acted as attorney for Mrs. Mitchell and Mrs. Sentner.

It is contended by defendants that the plaintiff has not the right to maintain a suit as an administrator of the estate of Matthew Wells Mitchell. Or. L., § 516, which is an amendment of 1899, reads as follows:

"Any person claiming an interest or estate in real estate not in the actual possession of another may maintain a suit in equity against another who claims an interest or estate therein adverse to him, for the purpose of determining such conflicting or adverse claims, interests, or estates."

The case of *Ladd v. Mills*, 44 Or. 224 (75 P. 141), disposes of this question, and we only need to quote from that opinion as follows:

"Under this provision, it is not necessary that the plaintiff have the legal title before he can maintain a

suit to determine an adverse claim to real estate. If he has any substantial interest in or claim to the property, and another asserts an estate or interest therein adverse to him, he is entitled to proceed under the statute. An administrator, in this state, has no legal title to the real property of his decedent; but he is entitled to its possession and control and to receive the rents and profits thereof until his administration is completed, or the same is surrendered to the heirs by order of the court or judge thereof: B..& C. Comp., § 1147. He therefore has such an interest as permits him to maintain a suit under the statute, especially where the estate is insolvent, and it is necessary to sell or dispose of the real property for the purpose of satisfying claims. This is the interpretation given to a similar statute by the Supreme Court of California in *Pennie v. Hildreth,* 81 Cal. 127 (22 P. 398), and is in harmony with its letter and spirit. * * * The statute has been amended since the decrees in *King v. Boyd,* 4 Or. 326, and *Stark v. Starr,* 73 U. S. (6 Wall.) 402 (18 L. Ed. 925), although there is nothing in either of them necessarily contrary to the doctrine above announced.''

See also *Pennie v. Hildreth,* 81 Cal. 127 (22 P. 398); *Rice v. Cary,* 170 Cal. 748 (151 P. 135); *State ex rel. v. Warner Valley Stock Co.,* 56 Or. 283 (106 P. 780, 108 P. 861); *Kingsley v. Kressly,* 60 Or. 167 (111 P. 385, 118 P. 678, Ann. Cas. 1913E, 746).

■ The main purpose of this suit is to cancel certain instruments and declare them null and void. This can be done properly in a suit in equity and is sufficient to confer equitable jurisdiction upon the court.

■■ Defendants contend that there was error in the decree of the court in favor of the plaintiff, in that the burden of proving fraud was not borne by plaintiff. In such a suit, fraud is a question of fact. It need not be shown by positive evidence, as this can seldom be

done. It is generally proved by circumstantial evidence and may be established by inference like any other disputed fact. The execution of the deed by Mrs. Mitchell to her daughter, thereby making use of the power of attorney for a wrongful purpose, was, to say the least, a legal fraud. See *Williamson v. North Pacific Lbr. Co.,* 42 Or. 153 (70 P. 387); *Porter v. O'Donovan,* 65 Or. 1 (130 P. 393).

The defendants, L. M. Laird and Luella E. Laird, pleaded that they received the deed to the land from Minnette Sentner, being a part of the premises in controversy, and were the owners and holders of the fee simple title thereto and were in possession thereof, and that neither of said defendants knew until about September 17, 1928, "that plaintiff claimed any interest in said premises." It is evidently intended to assert that these defendants are innocent purchasers in good faith for a valuable consideration, and we are inclined to so treat the pleading, although the words "good faith", or the like, are not used in the answer. See *Rhodes v. McGarry,* 19 Or. 222, 231 (23 P. 971). It appears from the testimony of Mrs. Laird that no investigation had been made by her or her husband concerning this power of attorney and the authority given under it. No legal advice appears to have been obtained in regard to the same. The power of attorney was an essential link in their title.

Where one person deals with another, knowing that the other is acting under a delegated authority, if he does not inform himself of the extent of such delegated authority, it is his own folly. Such party must interpret the instrument conferring the power at his own peril. In all such cases the principal is bound only to the extent of that authority: *Coulter v. Portland Trust*

*Co.,* 20 Or. 480 (26 P. 565, 27 P. 266); *Security Sav. Bank v. Smith,* 38 Or. 72 (62 P. 794, 84 Am. St. Rep. 756); Clark and Skyles on the Law of Agency, p. 514, § 213. At page 483 of the Coulter case, the court records the following language, which is applicable and determinative of this feature of the present case:

"It was argued here that the defendant is a *bona fide* purchaser, and therefore its title could not be disturbed. It is not perceived in the present condition of this record that the question of good faith enters into the case. The very defect complained of constitutes an essential part of the defendant's title, and it must be held to be chargeable with notice of the state of its own title, and of every fact appearing in any of the deeds or writings through which it deraigns title."

█ The ruling is applicable to the condition of the Lairds in the case at bar. They must be relegated to the covenants of warranty contained in their deed from Mrs. Sentner.

The decree of the trial court was right, and is affirmed.

McBRIDE, J., not sitting.

Former opinion corrected and rehearing denied October 21, 1930

### ON PETITION FOR REHEARING

BEAN, J. In this case there was a finding and determination of the court which the memorandum of opinion of September 4, 1930, fails to show.

In addition to the portion of the opinion herein in regard to the defendants L. M. Laird and Luella E. Laird, who received a deed for a portion of the premises in controversy and who claimed to be owners

in fee simple thereof, which answer was treated as claiming that they were innocent purchasers in good faith, we believed from the testimony that the Lairds, who were near neighbors and intimately acquainted and associated with Matthew Wells Mitchell, Mrs. Matilda J. Mitchell, his wife, and Minnette Sentner, the daughter of Mrs. Mitchell, knew at the time they received the conveyance from Minnette Sentner, the fraudulent grantee, all about the condition of the property and the circumstances relating to the conveyance thereof by Mrs. Mitchell, by means of the power of attorney, to her stepdaughter, and were fully aware of the fraud practiced by Mrs. Mitchell and Mrs. Sentner in regard thereto, as set forth in the opinion; that they were not innocent purchasers in good faith for a valuable consideration, and that such claim can not be sustained.

This memorandum will be added to the former opinion.