## MIYUKI OKIHARA v. CLARK, U. S. Attorney General.
### Civ. No. 616.

District Court, Hawaii.
May 6, 1947.

320

Wade Warren Thayer and Kennett B. Dawson, both of Honolulu, T. H., for plaintiff.

John F. Sonnett, Asst. Atty. Gen., Harry LeRoy Jones, Sp. Asst. to Atty. Gen., and George B. Searls, Chief Trial Atty., and William J. Conner, Atty., both of Washington, D. C., Ray J. O'Brien, U. S. Atty., of Honolulu, T. H., and George W. Jansen, Chief Trial Atty., of Washington, D. C., for defendant.

McLAUGHLIN, Judge.

This suit is founded upon Section 9(a) of the Trading with the Enemy Act, 50 U.S.C.A.Appendix, § 9(a), and has been brought by the plaintiff to recover two parcels of real property and certain sums of money (approximately $4,306) vested under the Act and Executive Order No. 9095, as amended, 50 U.S.C.A.Appendix, § 6 note, by the Custodian on June 5, 1945, Vesting Order No. 4982, 10 F.R. 10091.

From the evidence the following data are derived and recorded as the Court's

Findings of Fact.

1. This Court has jurisdiction of the parties and of the subject matter under Section 9(a) of the Trading with the Enemy Act.

2. Plaintiff is a resident of Honolulu, Hawaii, and is a citizen of the United States and also a subject and national of Japan.

3. Defendant is the duly appointed, qualified and acting Attorney General of the United States and as such is successor to

the Alien Property Custodian of the United States (Executive Order No. 9788, 50 U.S. C.A.Appendix, § 6 note).

4. On June 5, 1945, James E. Markham, the then duly appointed, qualified and acting Alien Property Custodian, deeming it necessary in the national interest, issued Vesting Order No. 4982 (Exhibit F), which vesting order was filed with the Federal Register on August 14, 1945 (10 F.R. 10091), and which vested (1) two parcels of real property situated in the City and County of Honolulu, Territory of Hawaii, described in Exhibit "A" attached to said vesting order; (2) a certain blocked savings account maintained with the Bank of Hawaii, Honolulu, Territory of Hawaii, which is due and owing to and held for and in the name of Tanezo Okihara; and (3) all right, title, interest and claim of any name or nature whatsoever of Tanezo Okihara in and to any and all obligations, contingent or otherwise and whether or not matured which are due and owing to and held for Tanezo Okihara by Kikuichi Okihara and/or Miyuki Okihara, including particularly but not limited to those sums arising from the sales by Miyuki Okihara to Mrs. Haruko Tengan and to Masaru Okada of real property owned by Tanezo Okihara and held in the name of Miyuki Okihara.

5. At the time of said vesting, plaintiff was the record owner of the real property described in Exhibit "A" attached to said Vesting Order.

6. At all times herein, Tanezo Okihara, uncle of plaintiff, was a resident, national and subject of Japan.

7. At all times herein, Kikuichi Okihara, uncle of plaintiff, was a resident of Honolulu, Hawaii, and a national and subject of Japan.

8. On and prior to July 25, 1941, Tanezo Okihara was the record owner as well as the true and beneficial owner of the real property described in Exhibit "A" attached to said Vesting Order and, in addition, of 11.09 acres of land subsequently conveyed to Mrs. Haruko Tengan and Lot 4 in Block 3 of the Kaiulani Tract subsequently conveyed to Masaru Okada.

9. On November 1, 1940, Tanezo Okihara executed a general power of attorney

to Kikuichi Okihara by the terms of which he authorized his attorney in fact, among other things "to lease, let, demise, bargain, sell, remise, release, convey, mortgage and hypothecate our lands." (Exhibit A)

10. On July 25, 1941, the attorney in fact of Tanezo Okihara, purporting to act for him under the power dated November 1, 1940, executed a deed to all of the real property then owned by Tanezo Okihara, by which he attempted to convey the same to plaintiff, Miyuki Okihara, by way of gift. Said deed was not delivered to plaintiff, but was filed by Kikuichi Okihara in the Bureau of Conveyances at Honolulu, Hawaii, on the 26th day of July, 1941, at 10:50 o'clock A. M. (Exhibit B)

11. Thereafter, plaintiff conveyed the parcel of real estate consisting of 11.09 acres of land to Mrs. Haruko Tengan and received the sum of $5,000 in cash therefor and the parcel of land described as Lot 4 in Block 3 of Kaiulani Tract to Masaru Okada and received the sum of $600 in cash therefor. (Exhibits D and E)

12. The cash referred to in paragraph 11 was deposited partly in the First Federal Savings and Loan Association in the name of plaintiff.

13. Plaintiff, notwithstanding that she was the record owner of the real estate, did not exercise complete and absolute ownership of the real property. Tanezo Okihara, notwithstanding the deed, through his attorney in fact and personally, has retained control and beneficial ownership of the real property and the proceeds thereof, and plaintiff in holding record title to the property and the proceeds thereof has acted for and on behalf of Tanezo Okihara and has been controlled by Tanezo Okihara and Kikuichi Okihara, the attorney in fact.

### Comment.

The two witnesses in this case—the plaintiff, who when an orphan was taken to and cared for for years in Japan by her uncle Tanezo, and her uncle Kikuichi, a man who has spent many years in a tuberculosis hospital—have impressed me as telling fully and truthfully the real facts in this case. Indeed, a rule of evidence during the trial was purposely relaxed so that these wit-

nesses could make a full disclosure. There is no question in my mind but what plaintiff's uncle Tanezo, with whom she had lived in Japan since 1930 as a daughter, intended upon her return to Hawaii in 1941 to give her as a gift all of his property in Hawaii so that she could care for herself, her sick uncle, and her sister.

Such facts evoke sympathy for this inexperienced, twenty-eight year old plaintiff, but unfortunately they are not the operative facts upon which the case must be decided.

Under the Act as now amended, to recover a plaintiff must allege and prove (1) that she is not an "enemy," "ally of enemy", or a "foreign national" (Sections 9 and 5(b) of the Act, 50 U.S.C.A.Appendix, §§ 9, 5(b); Executive Orders Nos. 8389 and 9095, both as amended, 12 U.S.C. A. § 95a note, 50 U.S.C.A.Appendix, § 6 note; Draeger Shipping Co. v. Crowley, D.C., 49 F.Supp. 215, and D.C., 55 F.Supp. 906; Josephberg v. Markham, 152 F.2d 644; Standard Oil Co. v. Markham, D.C., 64 F. Supp. 656), and (2) that she has an "interest, right or title" in the vested property and is the true owner thereof. Sections 9 and 5(b) of the Act and Executive Orders, supra.

The plaintiff has failed to allege that she is not a "national of a foreign country," and asks in her brief for leave to amend. The complaint will be regarded as containing such an allegation, but it avails the plaintiff nothing as she has testified that she is a dual citizen—United States and Japan.

The plaintiff has failed to meet the requirement of proof.

In the first place, she admits that she is a subject of Japan. She is thus a "national of a foreign country" within the meaning of Section 5(b) of the Act and the above indicated Executive Orders. The Act must be construed as a whole (Markham v. Cabell, 326 U.S. 404, 411, 66 S.Ct. 193, 90 L.Ed. 165), and plaintiff falls squarely within the definitions of a "national" of a designated enemy country. See Executive Order No. 8389, Section 5 E(i).

But it is said—correctly—that plaintiff is a citizen of the United States. True, but she is also a subject of Japan. See Perkins v. Elg, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320; Hackworth, Digest of International Law, Vol. III, Chap. IX; Moore, International Law Digest, Vol. III, Chap. X, p. 518. And while for most purposes while in the United States a dual citizen will be regarded as a United States citizen only, yet under an act such as the Trading with the Enemy Act, its scope, purpose and precise provisions require the consideration of realities as well. This conclusion is no more unusual than the familiar one, also dictated by this same Act, that a United States citizen resident in an enemy country in time of war is an "enemy alien" even though in fact he is neither an enemy nor an alien. See Section 2 of the Act, 50 U.S.C.A.Appendix, § 2.

Secondly, despite the grantor's intent to make a gift, he did not give his attorney in fact the power to make a gift. An agent has no power to make a gift of his principal's property unless that power is expressly conferred upon him. See Kaaukai v. Anahu et al., 30 Hawaii 226; Brown v. Laird, 134 Or. 150, 291 P. 352, 73 A.L.R. 877, 884; Bertelsen v. Bertelson, 49 Cal.App. 479, 122 P.2d 130. See also 2 Am.Jur., Agency, Sections 31 and 145; 2 C.J.S., Agency, § 114, p. 1332; and Mechem on Agency, 2d Ed., Sections 783 and 818. Here the recorded power "to lease, let, demise, bargain, sell, remise, release, convey, mortgage and hypothecate our lands" (Exhibit A) is not a power including authority to make a gift.

An unrecorded letter to his agent directing him to convey the grantor's property to his niece is unavailing as against a third party—here the United States. By Section 12757 Revised Laws of Hawaii 1945, unless recorded powers of attorney are not binding upon third persons.

Plaintiff, therefore, acquired no interest in the property purportedly conveyed by the deed of July 25, 1941 (Exhibit B). It is also significant that this deed was not delivered to her until after it was recorded.

Finally, in addition to the defects above referred to, Executive Order No. 8389, as amended, prevented an effective

transfer of the property to the plaintiff. Pursuant to Section 5(b) of the Act this Executive Order, the so-called Freeze Order, issued. It applied to Japan as of June 14, 1941, by an order to that effect dated July 26, 1941 (Executive Order No. 8832, 12 U.S.C.A. § 95a note, 6 F.R. 3715).

The Freeze Order prohibited transfers of any property in which a national of a blocked country (Tanezo—Japan) has an interest unless licensed by the Treasury Department. See Executive Order No. 8389, Section 1, E and F. No license covered the transfer here involved, and by General Ruling No. 12 (7 F.R. 2991) of the Secretary of the Treasury an unlicensed transfer of property of a national of a blocked country was "null and void." This same General Ruling defines a "transfer" to include "the making, execution, or delivery of any * * * conveyance * * * deed; * * * the fulfillment of any condition, or the exercise of any power of appointment, power of attorney, or other power." So it is that the deed of July 25, 1941 (Exhibit B), was null and void as an unlicensed transfer. And as, in any event, the deed was not recorded until July 26, 1941, at 10:30 A. M. Hawaiian Standard Time, and Executive Order No. 8832 applying the Freeze to Japan was at the very latest effective when filed at 12:08 P. M. Eastern Standard Time (6:38 A. M. Hawaiian Standard Time), under any construction of the time factor, the deed was null and void as an unlicensed transfer of property of a national of a blocked country. See Federal Register Act, 49 Stat. 500, 44 U.S.C.A. §§ 301, 307.

When vested, therefore, for all of the reasons above recited, the property belonged to Tanezo Okihara, an alien enemy and national of a designated enemy country, and plaintiff has no standing to recover it.

Upon the facts found the following are the

### Conclusions of Law.

A. The Court has jurisdiction of the parties and of the subject matter. 50 U.S. C.A.Appendix, § 9—Trading with the Enemy Act.

B. Tanezo Okihara is an enemy and a national of a foreign country and a national of a designated enemy country within the meaning of Sections 2 and 5(b) of the Trading with the Enemy Act, as amended, and Executive Orders Nos. 8389 and 9095, both as amended.

C. Plaintiff is a national of a foreign country within the meaning of Section 5(b) of the Trading with the Enemy Act, as amended, and Executive Orders Nos. 8389 and 9095, both as amended, since she is a subject of Japan, and since she has "acted on behalf of" or under the "control" of Tanezo Okihara.

D. The attorney in fact of Tanezo Okihara had no power or authority to convey the real property involved to plaintiff by way of a gift and the deed executed by him is not binding as against the defendant and the United States of America.

E. The deed executed by the attorney in fact of Tanezo Okihara did not operate as a transfer of the ownership of land or an interest, right, title, or estate therein since it was not delivered to plaintiff.

F. The deed referred to above did not create any "interest, right, or title" in the lands in plaintiff for the reason that no Treasury license for the transfer of the lands from Tanezo Okihara, a national of a foreign country (Japan), to plaintiff was obtained (1) either after the "effective date" of Executive Order No. 8389, as amended to apply to Japan and nationals thereof or (2) after the actual date of the amendment, and prior to the actual delivery or recording of said deed.

G. The proceeds of the sale of portions of the real property to Mrs. Haruko Tengan and to Masaru Okada are property of and are due and owing to and held for Tanezo Okihara.

H. At the time of the vesting by the Alien Property Custodian, the real property described in Exhibit "A" of the Vesting Order and the proceeds referred to in "G" above were property "owing or belonging to or held for, by, on account of, or on behalf of, or for the benefit of, an enemy" of the United States, Tanezo Okihara, within the meaning of Section 7(c) of the

324

Trading with the Enemy Act, as amended, 50 U.S.C.A.Appendix, § 7(c).

I. At the time of the vesting by the Alien Property Custodian, the real property described in Exhibit "A" of the Vesting Order and the proceeds referred to in "G" above were property or interests therein "owned or controlled by, payable or deliverable to, held on behalf of or on account of or owing to, or which is evidence of ownership or control by, a designated enemy country (Japan) or national thereof" within the meaning of Section 5(b) of the Trading with the Enemy Act, as amended, and the Executive Orders issued thereunder.

J. Plaintiff has no "interest, right, or title" in the real property or proceeds thereof within the meaning of Section 9(a) of the Trading with the Enemy Act, as amended.

K. The complaint should be and is hereby dismissed. An appropriate order approved as to form will be signed upon presentation.