ESTATE OF OLIVE D. CASEY, DECEASED, CARLTON D. CASEY, C. LEWIS CASEY AND ROBERT T. CASEY, CO-EXECUTORS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Casey v. Commissioner
Docket No. 3214-88
United States Tax Court
T.C. Memo 1989-511; 1989 Tax Ct. Memo LEXIS 486; 58 T.C.M. (CCH) 176; T.C.M. (RIA) 89511; September 21, 1989
John E. Donaldson, for the petitioners. John C. McDougal, for the respondent. KORNER
MEMORANDUM OPINION KORNER, Judge: * Respondent determined a deficiency of $ 56,532.51 in Federal estate tax due from the Estate of Olive D. Casey. After concessions, the sole issue *487 for decision is whether decedent's son, acting pursuant to a power of attorney, was authorized to make $ 146,360 in gifts to decedent's three children and seven trusts established for the benefit of her grandchildren. This case was submitted fully stipulated pursuant to Rule 122. [1] The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Olive D. Casey ("decedent") died testate on September 9, 1983. Decedent was a resident of Williamsburg, Virginia, at the time of her death. Decedent's three children; Carlton D., C. Lewis, and Robert T. Casey, were named as co-executors of her estate. The co-executors timely filed a Federal estate tax return on the estate's behalf. Decedent executed a power of attorney on December 26, 1973, which appointed her son, Robert T. Casey (Robert) as attorney-in-fact. This power *488 was to remain in effect until revoked, in writing, by her and was not to terminate in the event of her disability or incapacity. The power of attorney remained in effect until decedent's death. The power of attorney authorized Robert "to transact all of my business and to do and perform all things and acts relating to my property, real, personal or mixed, which I might do." The power of attorney specified that Robert's powers included, but were not limited to, the following: (1) To lease, sell, grant, convey, assign, transfer, mortgage and set over to any person, firm or corporation and for such consideration as he may deem advantageous, any and all of my property, real, personal or mixed, wheresoever located and howsoever held; * * * (3) To accept and receive any and all consideration payable to me on account of any such lease, sale, conveyance, transfer or assignment and to invest and reinvest the proceeds derived therefrom; * * * (11) To do, execute and perform all and every other act or acts, thing or things as fully and to all intents and purposes as I myself could or would do if acting personally, it being my intention by this instrument to give my attorney *489 hereby appointed, full and complete power to handle any of my business or to deal with any and all of my property of every kind and description, real, personal or mixed, wheresoever located and howsoever held, in his full and absolute discretion. * * * [Emphasis added.] Decedent was married to Carlton C. Casey (Carlton) at all relevant times prior to his death on June 10, 1982. The combined wealth of decedent and her husband was largely titled in his name and consisted in substantial part in real estate owned by Carlton, but to which decedent had a dower interest under the laws of Virginia. Approximately 90 percent of the combined wealth of decedent and Carlton was held in his name. In December 1974, decedent participated with her husband and children in formulating a plan for the minimization of transfer tax liability through the periodic transfer of property to their three children and seven grandchildren (the donees) in order to take advantage of the annual gift tax exclusion. To this end, a separate trust was established for the benefit of each of the seven grandchildren. Decedent was required to join in any conveyance of property held in Carlton's name to the donees *490 in order to release her dower rights and transfer marketable title. Pursuant to the plan, Carlton conveyed various parcels of land to the donees in 1974, 1975, 1976 and 1977. Decedent joined in each of these conveyances thereby relinquishing her dower rights. Decedent filed gift tax returns in those years for the purpose of consenting to be treated as having made one-half of each transfer. Decedent had previously joined in gifts made by her husband to their children in 1962, 1968 and 1969. Additional conveyances were made in 1980 and 1981. However, at some time after 1977, decedent had been rendered incompetent to manage her own affairs by the effects of Alzheimer's Disease. Therefore her son, Robert, acting under authority of the power of attorney conferred on him in 1973, joined in the conveyances on decedent's behalf. In December 1982, Robert Casey, pursuant to his power of attorney, transferred $ 14,000 ($ 1,400 per donee) from decedent's bank account to each of the ten donees. In July 1983, Robert Casey, acting in the same capacity, conveyed real property of the decedent with a value of $ 47,360 to the ten donees equally and drew checks payable to them in the aggregate *491 amount of $ 50,000 on her bank account. In both instances, Robert Casey believed he was acting within the scope of his power of attorney and in his mother's best interest in making the gifts in question. In both 1982 and 1983, decedent's income exceeded amounts required for her support. Decedent had assets in excess of $ 642,000 after the 1982 and 1983 gifts. Decedent passed away on September 9, 1983 at the age of 86. The estate tax return filed by the co-executors did not include in the gross estate the gifts made to the donees in 1982 and 1983 by Robert Casey pursuant to his power of attorney. In his notice of deficiency, respondent determined that such amounts had been improperly excluded from the gross estate. OPINION Section 2001 imposes a tax on the taxable estates of all citizen and resident decedents. Section 2051 defines the taxable estate as the gross estate less deductions. Section 2038(a)(1) specifies that a decedent's gross estate includes all property transferred by the decedent *492 where the enjoyment by the transferee is subject at the date of death to any change through the exercise by the decedent of a power to alter, amend, revoke or terminate the transferee's interest. Respondent contends that, in the absence of an express grant of authority, a general power of attorney does not authorize the holder of such power to make gifts of his principal's property. He thus argues that the transfers in question were revocable and thus includable in decedent's gross estate pursuant to section 2038. Petitioner argues that Robert Casey acted within the scope of his authority under the power of attorney in making the gifts in question, with the result that the value of the purported gifts are not includable in the decedent's gross estate. State law determines whether a decedent has an interest in particular property at the time of death. Morgan v. Commissioner, 309 U.S. 78 (1940); Estate of Gamble v. Commissioner, 69 T.C. 942, 948 (1978). Petitioner bears the burden of proof. Welch v. Helvering, 290 U.S. 111, 115 (1933); *493 Rule 142(a). We apply the law of the State of Virginia to determine whether the gifts in question were authorized under the power of attorney possessed by Robert Casey. Neither party has been able to furnish us with any Virginia authority addressing this particular issue, nor have we been able to find such authority. On brief, respondent cites various cases from other jurisdictions which generally stand for the proposition that a power of attorney will not be construed as granting a power to gratuitously convey the principal's property absent specific authorization. [2] See generally 73 A.L.R. 884 (1931). He urges that the highest court in Virginia would hold in similar fashion were the question of Robert Casey's authority under the instant power of attorney before it. *494 In this situation, we must determine, as best we can, what the highest court of Virginia would hold on the question of state law which is presented. Commissioner v. Bosch, 387 U.S. 456, 465 (1967). We concur in the general proposition that broad, general language in a power of attorney should be carefully scrutinized. However, a construction which faithfully reflects the intent of the grantor of the power is equally important. Holladay v. Daily, 86 U.S. 606, 610 (1873). See also Hotchkiss v. Middlekauf, 96 Va. 649, 32 S.E. 36 (1899). We believe that the Virginia Supreme Court would closely scrutinize the circumstances under which Robert Casey was granted the power of attorney and would conclude that the power to make gifts to family members in order to minimize the tax on the transfer of decedent's wealth to younger generations of her family, and to carry out an established estate plan, was within the scope of the power granted. Both prior and subsequent to execution of the power of attorney, decedent had joined with her husband *495 in making gifts to members of her family in order to make use of the annual gift tax exclusion. No gifts were made by decedent individually for the simple reason that the vast majority of marital wealth was held in the name of her husband individually. When decedent's husband died and she herself became incapacitated, Robert Casey did no more than continue decedent's usual practice of making gifts to the natural objects of her bounty in furtherance of her estate plan. We may rely on the surrounding circumstances in determining whether a power of attorney authorizes gratuitous transfers. Estate of Gagliardi v. Commissioner, 89 T.C. 1207 (1987); Estate of Bronston v. Commissioner, T.C. Memo. 1988-510. Based on the broad grant of authority in the power of attorney itself and on the particular circumstances under which it was granted, as well as decedent's established pattern of giving, we hold that Robert Casey was authorized to make the gifts in question on the decedent's behalf. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
*. Per order of the Chief Judge, this case was reassigned from Judge Robert P. Ruwe to Judge Jules G. Korner III↩.
1. All statutory references are to the Internal Revenue Code of 1954, as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. Fender v. Fender, 285 S.C. 260, 329 S.E.2d 430 (1985); Aiello v. Clark, 680 P.2d 1162 (Alaska 1984); Johnson v. Fraccacreta, 348 So.2d 570 (Fla. Dist. Ct. App. 1977); Estate of Rolater, 542 P.2d 219 (Okla. 1975); Gittings v. Estes, 440 S.W.2d 90 (Tex. Civ. App. 1969); Gaughan v. Nickoloff, 28 Misc.2d 555, 214 N.Y.S.2d 487 (Sup. Ct. 1961); Brown v. Laird, 134 Or. 150, 291 P. 352 (1930); Gouldy v. Metcalf, 75 Tex. 455, 12 S.W. 830 (1889). See also Von Wedel v. McGrath, 180 F.2d 716 (3d Cir. 1950); Kaname Fujino v. Clark, 71 F. Supp. 1 (D. Hawaii 1947), affd. 172 F.2d 384 (9th Cir. 1949); Brassert v. Clark, 162 F.2d 967↩ (2d Cir. 1947).