John L. Paul, Admr. of Sarah Paul et al., Appellants, *v.*
    Simon H. Grimm, Admr. of Jas. L. Thompson.

[Marked to be reported.]

*Principal and agent—Payment to agent must be in money.*

An attorney in fact with power to sell land has no authority, in the absence of instructions to the contrary, to receive payment for the land otherwise than in money. If such an agent sells lands and accepts in payment for them the bonds of a corporation, which he holds until they become worthless, he is liable to his principal for the price of the land.

By letter of attorney, an agent was authorized to sell lands "for such sum or price and on such terms as to him shall seem meet, and to ask, demand, recover and receive all sums of money which shall become due and owing to us by means of such bargain, sale or lease, and to take all lawful ways and means for such recovery thereof." The agent sold the lands, and instead of requiring money from the purchaser, took from him the bonds of a corporation, which he held until they subsequently became worthless. *Held*, that he was liable to his principal for the price of the lands.

In such a case the use of the words "price" and "terms" did not import that the attorney had license to take anything he pleased in payment for the land.

*Actions—Assumpsit—Act of May 25, 1887—Practice, C. P.*

An action of assumpsit lies by a principal against an agent who sells the principal's lands, and takes in payment therefor worthless bonds instead of money. The action includes not only the money which an agent actually receives but all money which he ought to have received.

Argued Oct. 2, 1894. Appeal, No. 25, Oct. T., 1894, by plaintiffs, from judgment of C. P. Westmoreland Co., Feb. T., 1889, No. 428, in case tried by court without jury. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit by principal against agent's administrator, to recover price of land sold by agent.

The following opinion was filed by DOTY, P. J. :

" From the evidence adduced the following facts appear:

" 1. The plaintiffs being the owners of a tract of land containing 151 acres, 152 perches, in Washington township, Westmoreland county, Penna., by their letter of attorney, dated Dec. 23, 1882, authorized James L. Thompson, defendant's

intestate, as follows : ' For us and in our names, place and stead to enter into and take possession of, make sale and convey all such messuages, lands, tenements and real estate, whatsoever, in Washington township, county and state aforesaid, being bounded and described as follows, to wit : . . . . containing 151 acres and 152 perches, to or in which we are or may be in any way entitled or interested, and to grant, bargain and sell the same, or any part or parcel thereof, for such sum or price and on such terms as to him may seem meet, and for us and in our names, to make, execute, acknowledge and deliver good and sufficient deeds and conveyances for the same, with covenants and warranty ; and until the sale thereof, to let and demise the said real estate for the best rent that can be procured for the same and to ask, demand, recover and receive all sums of money, which shall become due and owing to us, by means of such bargain, sale or lease, and to take all lawful ways and means for such recovery thereof,' etc.

" 2: By virtue of said letter of attorney, the said James L. Thompson in his lifetime sold the coal underlying said tract of land to one R. C. McCurdy, by deed dated Jan. 30, 1883, for the consideration of six thousand dollars.

" 3. The deed was duly recorded in the recorder's office of Westmoreland county, on May 3, 1883, in deed book 119, page 374, and purports on its face to have been executed for the consideration of six thousand dollars, lawful money of the United States.

" 4. The sale in fact was made and deed delivered in consideration of the payment to the attorney in fact by the purchaser of $6,000 in the first mortgage bonds of the Westmoreland County Coal & Coke Co.

" 5. James L. Thompson died Sept. 5, 1888, intestate, and letters of administration were duly granted to Simon H. Grimm, the defendant, who, on October 23, 1888, filed in the register's office an inventory and appraisement of the decedent's estate.

" 6. At the time of the decease of James L. Thompson, he had in his custody twelve bonds of the Westmoreland County Coal & Coke Co., of the par value of $6,000, with coupons attached, due and unpaid Jan. 1, 1888, and July 1, 1888.    The said bonds were the proceeds of the said sale by defendant's intestate, as attorney in fact for the heirs of Alex. Thompson, deceased, of the real estate aforementioned.

" [7. The said bonds have no market value. The Westmoreland County Coal & Coke Co. became insolvent and defaulted in the payment of the interest on the bonds. Some coupons, however, were paid by the company to the said James L. Thompson and the proceeds were paid by him to the heirs of Alex. Thompson and their receipt taken therefor on Aug. 14, 1886.] [7]

" 8. The premises described in the deed of James L. Thompson, attorney in fact, etc., to R. C. McCurdy, dated Jan. 30, 1883, recorded in Westmoreland county in deed book, vol. 119, page 374, were owned as follows, to wit: Samuel Thompson, 5-16ths; Lucy Thompson, 5-16ths; Jane Adair, 1-16th; Sarah Paul, 1-16th; Alexander Gartley, 1-16th; William A. Thompson, 1-96th; Agnes J. Thompson, 1-96th; Lydia E. Walton, wife of David Walton, 1-96th; Susan C. Thompson, 1-96th; Maggie Watt, wife of George Watt, 1-96th; and Loughrey H. Thompson, 1-96th.

" 9. On Jan. 10, 1889, plaintiffs brought suit against the administrator to recover, from his intestate's estate, the full sum of $6,000 in money. And on May 26, 1891, the parties, by their attorneys, agreed to dispense with trial by jury, and to submit the decision of the above stated case to the court to hear and determine the same.

" 10. The cause was duly heard Oct. 12, 1892, but the decision was withheld at request of counsel, who desired to furnish a brief of argument, and the papers were not finally delivered to the court until March 9, 1893."

" The following points were submitted by counsel for plaintiffs :

" ' [2. That the above named parties, with William Thompson, made and executed a power of attorney, dated Dec. 23, 1882, in which they authorized James L. Thompson to sell the said premises as in said power of attorney set forth; by virtue and in pursuance whereof the said James L. Thompson sold the said premises, for the consideration of $6,000, lawful money of the United State of America.' *Answer:* The first part of the proposition is correct. But we cannot report that James L. Thompson sold the said premises for the consideration of six thousand dollars, lawful money of the United States. The fact is otherwise.] [1]

" ' [3. The plaintiffs in this action are entitled to judgment against the said defendant, Simon H. Grimm, administrator of the estate of James L. Thompson, deceased, for their respective shares of the consideration money received by said Thompson in his lifetime, to wit, $6,000, that is to say, in the proportions set out, subject to the credits, as shown by the receipts offered by defendant to the amounts in said receipts set forth, with interest from Jan. 13, 1883.'  Refused. [2]

### "CONCLUSIONS OF LAW.

" The action is assumpsit, for money had and received.   The claim is for the six thousand dollars, the consideration mentioned in the deed.   The contention is that the attorney in •fact had no authority to sell except for a cash consideration and that he is concluded by the consideration named in the deed.

" The defence contends that in the present action plaintiffs are not entitled to recover more than the attorney actually received.   That in fact whatever money was received by the defendant's intestate, in the shape of interest or as consideration for the land conveyed, was paid to the parties entitled thereto, as is evidenced by the receipts dated Aug. 14, 1886; and that judgment for this reason ought to be rendered in favor of the defendant.   To sustain this contention, we are referred to Lee v. Wright, 14 S. & R. 105, and to Rush v. Hart, Ib. 230.   These actions were against trustees; and it is expressly decided that the plaintiff in assumpsit can recover no more than the defendant has actually received in money in any action for money had and received.   The facts in the present case are somewhat different.   The defendant's intestate was the attorney in fact.   As such agent his duties are clearly defined, and so are his liabilities.   The principle laid down in Opie v. Serrill, 6 W. & S. 269, applies more certainly to the facts of this case, and the attorney would be liable for the money he ought to have received.   If the instructions were clearly violated and the land sold for bonds without authority, an action of assumpsit would likely lie for the amount of the consideration.   In the view we take of this case, it is unnecessary to dispose of it on this technical ground.

" [The letter of attorney authorized James L. Thompson to

'grant, bargain and sell the same, or any part or parcel thereof, for such sum or price and on such terms as to him may seem meet.' There was no other authority to make the sale. Both parties are bound by the language of the power of attorney. If the language be doubtful, it would be taken most strongly against the plaintiffs, whose language it is. There was a clear authority to sell. The only question is, whether there was any authority to make a sale for other consideration than lawful money. The word 'sum' naturally imports a sum of money, and so does the word 'price' as ordinarily understood. The latter word, however, has not necessarily such a restricted meaning. It is sometimes used in the sense of reward or equivalent. But, without basing a decision on the technical meaning of these words, there is a clause which seems to give to the attorney ample discretionary power. 'And on such terms as to him may seem meet.' This clause does not necessarily refer to the time of payment, but, we take it, it gives some discretion also as to the manner of payment. 'Terms' are the equivalent of 'conditions' in contracts. Webster defines 'terms' as 'propositions stated or promises made, which, when assented to or accepted by another, settle the contract and bind the parties.' The letter of attorney, therefore, if this view be correct, empowered James L. Thompson to negotiate for the sale of the farm and to sell for such price and on such conditions as to him might seem meet.

"Of course, if there was any bad faith on the part of the attorney in fact, the case would be different, and he would have been liable on another principle. But there is no allegation of bad faith, or negligence, on his part. The transaction was in good faith. The uncontradicted evidence shows that the coal was sold at the best price and the best terms obtainable at the time. The attorney in fact sold his own coal on the same terms and an offer was made to show that three thousand acres of adjoining coal was purchased about the same time and on like terms as to price and payment. It is true, this offer was excluded, as it did not seem pertinent under the issues, but, on the question of good faith, it would have been material. Coal fields are not infrequently taken up in this way. The money actually received by Thompson was promptly paid to the parties in interest and releases taken therefor. Part of this was the

proceeds of coupons paid by the Westmoreland County Coal & Coke Co. before the default was made.

" We have then an action for money had and received. The evidence shows that defendant's intestate held no money received for the use of the plaintiffs ; that if there is any liability it is by holding him responsible for what he ought to have received. The consideration mentioned in the deed as $6,000 lawful money of the United States is not conclusive. The fact is, that money was not received but, instead, $6,000 bonds of the Westmoreland County Coal & Coke Co. That James L. Thompson acted in perfect good faith is apparent, as he sold his own coal on the same terms and conditions. Under these circumstances we are not to construe the letter of attorney most favorably to the plaintiffs. The letter admits of the construction we have already given it, and it would be a great hardship to otherwise hold. All were confident of the success of the undertaking at the time, and that the company afterwards failed cannot be charged to the attorney in fact. He was constituted attorney with full discretionary powers, and having acted in good faith, there ought to be no responsibility in this or any other form of action.

" And now, April 8, 1893, judgment is entered in favor of the defendant.] " [8]

*Errors assigned* were (1, 2, 7, 8) portions of opinion in brackets ; admission in evidence of : (5) contract with purchaser of property for payment in bonds ; (3) finding of bonds in custody of defendant's intestate ; (4) receipts showing that plaintiffs had received interest on the coupons after the sale and conveyance ; (6) inventory and appraisement setting apart bonds for plaintiffs ; quoting bills of exception, evidence and findings.

*John F. Wentling, David A. Miller* and *Edward B. McCormick* with him, for appellants.—A transfer of goods for money is a sale. A commutation of goods for goods is an exchange : 2 Bl. Com. 446.

A sale is a transfer of the absolute title to property for a certain agreed price. It is a contract between two parties, one of whom acquires thereby a property in the thing sold, and the

other parts with it for a valuable consideration : Story on Sales, § 1 ; Creveling v. Wood, 95 Pa. 152.

A power to sell for a specified sum means a cash sale, and not for approved notes : 4 Kent, 331 ; Ives v. Davenport, 3 Hill, 373.

A power of attorney to sell land does not include the power to exchange in barter or to mortgage it : Story, Agency, 9th ed., pp. 84, 96, 97 ; Guerriero v. Peile, 3 B. & Ald. 616 ; Wood v. Goodridge, 6 Cush. 117.

An agent with instructions is bound to regard them in every point, nor can he depart from them, without making himself responsible for the consequences : Story on Agency, 9th ed. 96 ; 1 Parsons on Contracts, 5th ed., p. 80 ; Wilson v. Wilson, 26 Pa. 393 ; Schrack v. McKnight, 84 Pa. 26 ; Kroeger v. Pitcairn, 101 Pa. 311 ; Opie v. Serrill, 6 W. & S. 264 ; Bank v. Ashworth, 123 Pa. 212 ; Bank v. Goodman, 109 Pa. 422 ; McCulloch v. McKee, 16 Pa. 289 ; Gilbert v. How, 45 Minn. 121 ; Rossiter v. Rossiter, 8 Wend. 494.

The court has given the words " price " and " terms " a forced artificial control and a secondary meaning given by lexicographers to the words when used in an entirely different sense : Shafer v. Senseman, 125 Pa. 310 ; Story on Agency, 9th ed., p. 100, § 83.

*V. E. Williams*, *A. M. Sloan* and *W. F. Griffith* with him, for appellee.—Even where defendant has acted unfairly and wasted the property, plaintiff in assumpsit can recover no more than defendant has actually received in money, in an action for money had and received : Lee v. Wright, 14 S. & R. 105 ; Rush v. Good, 14 S. & R. 230 ; App v. Congregation, 6 Pa. 201.

Defendant's acts were fully authorized by the letter of attorney.   The word " sum " of itself imports a sum of money : U. S. v. Van Auken, 96 U. S. 368.   As to "price," " its first and general meaning originates in the fact that property is ordinarily sold for money, not because the word has necessarily such a restricted meaning : " Hudson Iron Co. v. Alger, 54 N. Y. 177.

The words of a contract are to be taken most strongly against the party using them, and he will not be allowed even to punctuate the writing so as to lessen his liability : White v. Smith, 33 Pa. 186.

Payment may be made in something else than money: Huffman v. Walker, 26 Gratt. 316; Anderson, L. Dict. "Payment."

A deed purporting to be executed under a power of attorney must be executed in pursuance of the power, and be within its terms, hence a power to sell does not authorize a gift of the property or the transfer of it for any purpose other than in completion of a sale : 3 L. R. An. 754; Dupont v. Wertheman, 10 Cal. 354; Mott v. Smith, 16 Cal. 533.

Where an agent, without authority, indorses notes for his principal, who receives and appropriates the proceeds, the unauthorized act is ratified and the liability of the principal is fixed : Horter v. Silliman, 3 W. N. 405.

Schrack v. McKnight, 84 Pa. 26, was an action by the agent against the principal, the reverse of the present case.

Kroeger v. Pitcairn, 101 Pa. 311, was an action on the case for damages sustained by plaintiff, in consequence of acts and representations made by defendant, in excess of his authority as agent for an insurance company, and it was held that the agent was liable to the person with whom he was dealing for and on account of his principal, although guilty of no intentional fraud.

Bank v. Ashworth, 123 Pa. 212; Bank v. Goodman, 109 Pa. 422; and McCulloch v. McKee, 16 Pa. 289, are authority only for the principle that an agent to collect has no authority to accept or substitute other obligations for the claim intrusted to him, without making himself liable.

Opinion by Mr. Justice Green, Jan. 7, 1895 :

In 2 Benjamin on Sales, sec. 1099, note 26, it is thus stated : " Payment to an agent must be in money. This is the general principle in the absence of express authority to the agent to receive something else than money," citing a large number of cases.

In the case of Catterall v. Hindle, L. R. 1 C. P. 186, Keating, J., delivering the opinion, said, " That a broker or agent employed to sell has, prima facie, no authority to receive payment otherwise than in money, according to the usual course of business, has been well established, and it seems equally clear that if, instead of paying money, the debtor writes off a debt due to him from the agent, such a transaction is not pay-

ment as against the principal, who is no party to the agreement, though it may have been agreed to by the agent." Citing several cases.

In Underwood v. Nicholls, 17 C. B. 239 (84 E. C. L. Rep.), the facts were that A, as agent for B, sold wine to C, who paid for it by returning to A his own check which C had cashed for him a few days previously and which it appeared had never been presented by C. Held that this was not, as between B and C, payment of C's debt, although the jury found that the transaction was bona fide. WELLS, J., said, " Prima facie an agent should receive debts for his principal in money. A payment by a check the jury would no doubt find to be a payment in the ordinary course of business. The transaction here merely amounts to the giving back of the agent's check which in his hands was a piece of waste paper."

In McCulloch v. McKee, 16 Pa. 289, we held that an agent having authority only to collect a debt, has no right to take a note for the amount of it from the debtor to himself and thus substitute himself as creditor. CHAMBERS, J., delivering the opinion, said, " Carpenter's authority by the order to McKee was to pay the money to McCulloch. McCulloch was a special agent to receive the money from McKee, and as such he had not authority to substitute anything else for the money so as to discharge McKee. An agent specially employed to receive payment in money cannot vary from his authority in receiving a bill."

Fifth National Bank v. Ashworth, 123 Pa. 212. If a bank receiving a check upon another bank for collection, surrender the check to the drawee and receive a cashier's check in lieu thereof, its liability to its depositor becomes fixed, as much as if it had received the cash. " It has no right unless specially authorized to do so to accept anything in lieu of money." PAXSON, J.

In Opie v. Serrill, 6 W. & S. 264, SERGEANT, J., delivering the opinion, said, " An agent undertaking to collect a debt placed in his hands, who releases it and takes from the debtor a new note to himself, does in law receive payment of the debt, and is at once liable to the principal as if he had received the money. . . . He must be considered as having made himself liable for the money he ought to have received."

In Wilson v. Wilson, 26 Pa. 393, LEWIS, C. J., said, "The primary obligation of an agent whose authority is limited by instructions, is to adhere faithfully to those instructions in all cases to which they ought properly to apply : Story on Agency, sec. 192.  He is in general bound to obey the orders of his principal *exactly*, if they be imperative and not discretionary; and in order to make it the duty of a factor to obey an order it is not necessary that it should be given in the form of a command.  The expression of a wish by the consignor may fairly be presumed to be an order. . . . To justify a departure from instructions where a loss has resulted from such deviation, the case must be brought within some of the recognized exceptions."

The foregoing authorities are not, and cannot be, controverted, and it is only necessary to show that they are applicable to the present case.  The letter of attorney under which the defendant's intestate sold the plaintiffs' land authorized him to sell the same, "for such sum or price and on such terms as to him shall seem meet, . . . . and to ask, demand, recover and receive all sums of money which shall become due and owing to us by means of such bargain, sale or lease and to take all lawful ways and means for such recovery thereof."  By virtue of the authority thus conferred, the attorney in fact, James L. Thompson, very shortly after the date of the letter of attorney, which was Dec. 23, 1882, sold and conveyed the coal underneath the land of the plaintiffs, by deed dated Jan. 13, 1883, to one R. C. McCurdy for the sum of "six thousand dollars lawful money of the United States," as is recited in the deed. In point of fact the agent instead of requiring money from the purchaser took from him six thousand dollars of bonds of the Westmoreland County Coal & Coke Co. which proved to be utterly worthless and of no value whatever.

The learned court below was of opinion that because the letter of attorney granted authority to the attorney to sell "on such terms as to him shall seem meet," it was competent for him to take the bonds in payment of the purchase money instead of money.  We cannot assent to that proposition.  The word "terms" in such a connection in ordinary acceptation means the times and amounts of the payments.  If there are any deferred payments, it may also embrace stipulations as to how

such payments shall be secured. It certainly does not import that the attorney has license to take anything he pleases as payment whether it has value or not. Nor, we apprehend, does the use of this word authorize the attorney to subvert the rule of law applicable in such cases and substitute for money, which the law implies, specific property of any kind. The court also thought that because the word " price" was used it might authorize the acceptance of some other form of payment than money, though the decision was not put upon that ground. As however counsel for the appellees has pressed this ground in the argument, we only stop to say that we regard it as altogether untenable. In the connection in which it is used here we cannot recognize any distinction between it and the word " sum."

A point was also suggested by the court, and insisted upon by appellee's counsel in argument, that this is an action for money had and received, and therefore nothing can be recovered but money actually received by the defendant. This was not really true even before the practice act of 1887 was passed: Opie v. Serrill, 6 W. & S. 269, in which it was held that the action included all money which the defendant ought to have received. But since assumpsit has become a statutory remedy its scope has been vastly enlarged and without any doubt embraces everything claimed in this action.

The findings of the court below do not inform us as to whether the plaintiffs ever had any knowledge that the bonds in question were taken in payment for their coal, nor whether they ever assented to that kind of payment, but certain it is the bonds were never delivered to the plaintiffs, because they were found among the papers of the attorney after his death. Nor is there any finding or evidence that the bonds were ever tendered to the plaintiffs. If they ever did have any value and had been delivered or tendered to the plaintiffs at the time they were taken in January, 1883, there would have been an opportunity to realize on them at least what they were worth in the market. When the attorney chose to keep them in his own possession he is certainly chargeable with the loss which resulted during his retention of them. So far as this record shows he never gave his principals anything for their coal except a few dollars which he paid some of them in 1886 and for which sums he took their releases.

If the attorney had exercised the commonest and most ordinary prudence, and had taken from the purchaser, bonds secured by a mortgage on the property sold, with a suitable agreement as to the removal of the coal, he could doubtless have secured the payment of all the purchase money for his principals, and saved himself from any ulterior liability. But for the courts to sanction the degree of license in dealing with the property rights intrusted to him by his principals, which he practiced in this instance, would be so wide a departure from the law as we understand it that we cannot give it any sanction. We cannot agree that an attorney in fact with power to sell the lands of his principal for lawful money, may accept as payment the worthless bonds of an insolvent company and thereby discharge himself of all liability to his principals.

All the assignments of error except the fourth and seventh are sustained.

The judgment of the court below is reversed and the record is remitted with instructions to the court below to enter judgment in favor of the several plaintiffs for such sums as are due them after deducting all money payments received by them respectively with costs.

MR. JUSTICE WILLIAMS and MR. JUSTICE MITCHELL dissent.