Argued October 11; affirmed October 24, 1944

CAPPS ET UX. *v.* MINES SERVICE, INC., ET AL.

(152 P. (2d) 414)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

*E. O. Immel,* of Eugene, for appellant.

*Herbert W. Lombard,* of Cottage Grove, for respondent.

LUSK, J.

On June 4, 1938, L. M. Capps and Elizabeth Capps, his wife, the plaintiffs and respondents herein, at Blackfoot, Idaho, executed separate powers of attorney by which they each authorized the defendant Kenneth Watkins to sell and convey any real estate owned by them in Lane County, Oregon, and particularly certain mining properties. The power executed by L. M. Capps, so far as here material, reads as follows:

"KNOW ALL MEN BY THESE PRESENTS, That I, L. M. CAPPS, of Blackfoot, Idaho, do hereby make, constitute and appoint KENNETH WATKINS, of Eugene, Oregon, my true and lawful agent and attorney to negotiate for the sale of, and to sell, bargain and convey any real estate owned by me in Lane County, Oregon, or any part thereof, specifically including the mining properties generally known as the Helena Mine and the Musick Mine, for such prices or considerations and on such terms as to my said agent and attorney shall seem proper (including the power to take a purchase

money mortgage for part of any purchase price), and to execute, acknowledge and deliver a good and sufficient deed or deeds and conveyances therefor, and generally to act in the premises as effectually as I could do if personally present, hereby ratifying and confirming all that my said attorney shall do by virtue hereof.''

The power executed by Mrs. Capps was in identical language, with the exception that the words ''including the power to take a purchase money mortgage for part of any purchase price'' were deleted therefrom. These powers of attorney were to remain irrevocable for a period of six months, and, while they were still in effect, the agent, Kenneth Watkins, purporting to act under the authority so given him, as attorney in fact for the respondents, on the seventh day of July, 1938, executed a warranty deed conveying certain mining properties in Lane County owned by the respondent, L. M. Capps, to the defendant Mines Service, Inc., an Oregon corporation, and received as the consideration therefor 1,000 shares of the capital stock of Mines Service, Inc., the certificate for which was issued in the name of L. M. Capps and Elizabeth Capps.

Thereafter, the respondents brought this suit to obtain a decree declaring void and canceling the deed of conveyance. The complaint charged that the defendants Mines Service, Inc., Kenneth Watkins and others had conspired to acquire the title to plaintiff's property by fraudulent means. After a trial the circuit court found that the charges of fraud had not been established, but held that under the powers of attorney the defendant Kenneth Watkins had no legal right or authority to execute the conveyance in question, and entered a decree declaring such conveyance

void. From this decree the defendant Mines Service, Inc., has appealed.

The issue of fraud made by the pleadings has not been presented in this court, and the only question which need be determined is whether or not the defendant Watkins was authorized, under the powers of attorney, to execute the deed of conveyance in question. As to this the respondents contend that Watkins exceeded his power when he attempted to make an exchange of the property for corporate stock; while it is the appellant's position, as stated in its brief, that the attorney in fact "had the authority to dispose of the property for such prices or considerations as he might deem proper", and that he was not limited to making a sale for cash. By the terms of the powers of attorney Watkins was authorized to "negotiate for the sale of, and to sell, bargain and convey ° ° ° real estate ° ° ° for such prices or considerations and on such terms as to my said agent and attorney shall seem proper".

■ "Sale is a word of precise legal import, both at law and in equity. It means at all times a contract between parties to give and pass rights of property for money which the buyer pays or promises to pay to the seller for the thing bought and sold." *Williamson v. Berry,* 8 How. 544, quoted with approval in *Coulter v. Portland Trust Co.,* 20 Or. 469, 481, 26 P. 565, 27 P. 266.

■ To the same effect see *Brown v. Laird,* 134 Or. 150, 156, 291 P. 352, 73 A. L. R. 877; *Freeman v. Trummer,* 50 Or. 287, 292, 91 P. 1077; *Chapman v. Hughes,* 134 Cal. 641, 657, 58 P. 298, 60 P. 974, 66 P. 982; *Paul v. Grimm,* 165 Pa. 139, 146, 30 Atl. 721, 44 Am. St. Rep. 648; Restatement, Agency, § 65, (1) comment a; 21

R. C. L., Principal and Agent, 886, § 58. And, although in statutes the word "sale" is commonly construed as including "exchange" or "barter" (see *Associates Discount Corp. v. Fay Co.*, 307 Mass. 577, 582, 30 N. E. (2d) 876, 132 A. L. R. 519, and numerous other cases cited in 38 Words and Phrases (Perm. Ed.), pp. 100 et. seq.), it is universally held at common law that the authority to sell does not carry with it the power to make an exchange, which is "a contract by the terms of which specific property is given in consideration of the receipt of property other than money": *Freeman v. Trummer*, supra.

So much seems to be conceded by counsel for the appellant, and his whole argument rests upon the use of the word "consideration" in the instruments, which is said to be a word sufficiently broad in meaning to include other property than cash. It is argued in effect that, by inclusion of the authority to sell, not only for such *prices*, but also for such *considerations* as to the agent might seem proper, the ordinary and precise meaning of the word "sell" has been expanded so as to embrace the power to exchange.

This contention calls for a construction of the instrument. By concession of counsel for appellant, the authority will be construed strictly so as to exclude the exercise of any power which is not warranted either by the actual terms used or as a necessary or usual means of executing the authority with effect. *Coulter v. Portland Trust Co.*, supra, 20 Or. at p. 479; *United States National Bank v. Herron*, 73 Or. 391, 399, 144 P. 661, L. R. A. 1916C, 125; 21 R. C. L., Principal and Agents, 881, § 54. It is stated in 2 Am. Jur. Agency, 32, § 31, that it is more accurate to say "that the power must be strictly pursued", and *Brown v. Laird,* supra,

among other cases, is cited in support of this assertion. But however that may be, it is certain, as the court said in the case last cited (134 Or. at p. 157), that "the intention of the donor of the power is the great principle that governs", and it seems to us to be clear that the instruments in question disclose no intention to authorize an exchange. They do not say so, and one would suppose that had that power been intended to be conferred it would have been plainly expressed. The word "considerations", of course, includes other things of value than money; but it undoubtedly does include money, and, when linked up with an authority to sell, it can only be concluded, having in mind the established meaning of the word "sale", that it was used in the sense of a money consideratioin, that the two words "prices" and "considerations" were used interchangeably, and that the authority to arrange for terms refers to "the times and amounts of the payments". *Paul v. Grimm,* supra.

This being our interpretation of the language of the instruments, it follows that in executing the deed of conveyance in consideration of shares of stock of the appellant corporation, the attorney in fact exceeded the power granted to him and the deed never had any validity. The appellant knew that it was dealing with a person acting under a delegated authority. It was bound to interpret the instruments conferring the authority at its peril, and the respondents, as principals, were bound only to the extent of that authority. *Brown v. Laird,* supra, 134 Or. at p. 160, and cases there cited.

It follows that the decree of the circuit court was right. and it is affirmed.