Argued and submitted February 2, 2010, affirmed March 16,
petition for review allowed September 15, 2011 (350 Or 716)

**SYNECTIC VENTURES I, LLC,**
an Oregon limited liability company;
Synectic Ventures II, LLC,
an Oregon limited liability company;
and Synectic Ventures III, LLC,
an Oregon limited liability company,
*Plaintiffs-Appellants,*

*v.*

**EVI CORPORATION,**
an Oregon corporation,
dba Endovascular Instruments, Inc.;
Synectic Ventures IV, LLC,
an Oregon limited liability company;
Synectic Ventures V, LLC,
an Oregon limited liability company;
and Synectic Asset Ventures, LLC,
purportedly an Oregon limited liability company,
*Defendants-Respondents.*

Multnomah County Circuit Court
060404199; A139879 (Control), A142184

251 P3d 216

Gary M. Berne argued the cause for appellants. With him on the briefs were Mark A. Friel and Stoll Stoll Berne Lokting & Shlachter PC.

Derek D. Green argued the cause for respondent EVI Corporation. With him on the brief were Robert D. Newell, Kevin H. Kono, and Davis Wright Tremaine LLP.

No appearance for respondents Synectic Ventures IV, LLC, Synectic Ventures V, LLC, and Synectic Asset Ventures, LLC.

Before Sercombe, Presiding Judge, and Armstrong, Judge, and Wollheim, Judge.

552

SERCOMBE, P. J.

**SERCOMBE, P. J.**

These consolidated appeals involve an action by three investment funds to collect on a promissory note and foreclose on a security interest against defendant EVI Corporation (EVI) pursuant to the terms of a loan agreement. The dispute between the parties turns on whether an amendment to the loan agreement is binding on plaintiffs. The trial court entered a general judgment that dismissed plaintiffs' claims on summary judgment, concluding that the parties had amended the loan agreement to extend the time for EVI to satisfy its obligations, and that EVI satisfied those obligations within the extended time. The trial court subsequently entered a supplemental judgment awarding defendant attorney fees and costs. Plaintiffs separately appealed the judgments and the appeals were consolidated. The dispositive issue on appeal is whether the trial court correctly determined that plaintiffs' manager, Craig Berkman, had the authority to bind plaintiffs to the amendment. We affirm.

Plaintiffs are three investment funds that were organized as limited liability companies and originally managed by Berkman. The operating agreement for each plaintiff designates a separate management firm controlled by Berkman as the manager for each fund.[1] Berkman was also the board chairman and treasurer of EVI, and served as the main fundraiser for EVI. His involvement with EVI was allowed under the terms of the operating agreements. On appeal, plaintiffs argue that Berkman lacked authority to bind them to the amendment. Initially, they assert that, because Berkman breached multiple duties to plaintiffs by executing the amendment, he did not have authority to bind them. Alternatively, plaintiffs argue that they limited Berkman's authority to act without prior approval before he signed the amendment, and that EVI had knowledge, through Berkman and EVI's CEO, Thomas Wiita, that Berkman lacked authority to enter into the amendment.

---

[1] The parties treat Berkman in his personal capacity and Berkman's management firms interchangeably in the briefing; so, for the purposes of this opinion, unless otherwise noted, references to Berkman are to both Berkman as an individual and the management firms that he controlled.

Accordingly, plaintiffs claim that the amendment is not binding.

EVI contends that the amendment was valid, given that plaintiffs' operating agreements vest Berkman with exclusive management authority, and that he was acting within his authority when he entered into the amendment on behalf of plaintiffs. In addition, EVI argues that the operating agreements granted third parties the right to rely, without further inquiry, on a certificate signed by Berkman as the managing member. EVI also maintains that plaintiffs' operating agreements authorized the types of conflicts of interest that plaintiffs assert exist in this case. Finally, EVI asserts that plaintiffs ratified the amendment because they did not object to it until seven months after they discovered it.

The basic facts are undisputed. Plaintiffs are venture capital funds that were formed to invest in emerging companies. Each plaintiff is a fund that consists of individual investors. All three are governed by substantially similar operating agreements. Berkman's management entities are named in each operating agreement as the manager, and those documents generally grant the manager the exclusive authority to manage and control the interests of plaintiffs. EVI is an Oregon corporation in the medical device field.

Plaintiffs, along with two other investment funds—defendants Synectic Ventures IV, LLC (Fund IV), and Synectic Ventures V, LLC (Fund V)—advanced over $3 million to EVI before March 2003. In March 2003, the parties documented the terms of the advances in the loan agreement, which required EVI to pay the debt by December 31, 2004. If the debt was not timely paid, plaintiffs were entitled to foreclose on EVI's assets. However, if EVI received additional investments of at least $1 million before the deadline, EVI could force a conversion of the debt to equity (in the form of EVI stock).

Around the time that the parties executed the agreement, some, but not all, of the individual investors in plaintiffs hired a Portland law firm to investigate Berkman's management of the funds. After some initial investigation and communications with Berkman, the concerned investors and Berkman entered into a letter agreement in September 2003.

The terms of the letter agreement provided that Berkman would inform the concerned investors of certain activities taken on behalf of plaintiffs, and that Berkman would not take on additional obligations or increase existing obligations for plaintiffs, without advance approval of the concerned investors. We excerpt the portions of the September 2003 letter that are relevant to our analysis below:

> "Fund Obligations. The investors would like your agreement that no new obligations will be entered into on behalf of the Funds, and no current obligations of the Funds will be increased, without advance approval by the investors. You may provide notification to me of proposed new or increased obligations and I will see that it is forwarded to all of the investors that we represent. The investors would accordingly like you to notify us as to: (i) identity of the Fund that proposes to take action, (ii) the action proposed (e.g., agreement to be entered into or new obligation to be undertaken or existing obligation to be increased), (iii) the approximate amount at issue, if this can be ascertained or estimated, (iv) the other contracting party, and (v) the reason for the transaction or arrangement. Upon this notice, the investors will consider the proposal and promptly provide a response to you.

> "* * * * *

> "Please understand that under these arrangements, you and the corporate manager entities you control will remain responsible for the Funds to the same extent as in the past. These arrangements are intended primarily to provide the investors with greater information and assurance as to the Funds' management."

(Underscoring in original.)

The terms agreed to in the September 2003 letter agreement were reiterated in another letter agreement in June 2004. The June 2004 letter agreement also contemplated winding up the funds. Further communications on behalf of the concerned investors in late 2004 informed Berkman that the concerned investors intended to remove him as manager as soon as a replacement could be found.

Although the exact date is disputed, in September 2004, Berkman executed an amendment to the agreement on

plaintiffs' behalf that extended EVI's repayment deadline until December 31, 2005. He also executed a Unanimous Consent on behalf of EVI's board of directors, which allowed Wiita to execute the amendment for EVI. Plaintiffs assert that they were unaware of the amendment at the time it was made. Pursuant to the process outlined in the operating agreements, plaintiffs removed Berkman as manager in December 2004 and hired another management company.

EVI did not pay the debt and did not receive additional investments of $1 million before December 31, 2004. In early 2005, plaintiffs discovered the existence of the amendment. In late August 2005, plaintiffs notified EVI that the amendment was not authorized and that EVI was in default. Subsequently, another investment fund managed by Berkman—Synectic Asset Ventures LLC (SAV)—invested $1 million in EVI by December 31, 2005. EVI then purportedly converted the loans subject to the agreement into equity in satisfaction of its debt.

Plaintiffs filed suit. Eventually the parties filed cross-motions for summary judgment, and the trial court granted EVI's motion, while denying plaintiffs' motion. The trial court also dismissed Fund IV, Fund V, and SAV. Plaintiffs appeal.

Plaintiffs assign error to the trial court's denial of plaintiffs' motion for summary judgment, the granting of EVI's cross-motion for summary judgment, and the dismissal of Fund IV, Fund V, and SAV.[2] Plaintiffs consolidate their argument on appeal, and maintain that the amendment is not binding on them for alternative reasons. They claim that Berkman breached several fiduciary duties owed to plaintiffs at the time of the amendment, and that, because EVI had actual knowledge of his conduct, the amendment is not binding on plaintiffs. Alternatively, plaintiffs assert that, even if Berkman did not breach any fiduciary duties, he lacked the authority to execute the amendment on plaintiffs' behalf,

---

[2] Plaintiffs also assign error to the trial court's award of attorney fees, but acknowledge that, if they are not successful on the merits of this appeal, the attorney fees and costs award should be affirmed. Based on our resolution of the appeal from the general judgment, we also affirm the supplemental judgment awarding attorney fees and costs.

and, because EVI knew that he lacked authority, the amendment cannot be enforced against plaintiffs.

EVI responds that the amendment is enforceable for any of three reasons. First, EVI contends that Berkman, through plaintiffs' operating agreements, had actual authority to enter into and bind plaintiffs to the amendment. Second, EVI argues that, regardless of Berkman's actual authority, EVI was entitled to rely on Berkman's apparent authority given that the operating agreements specifically authorized third parties to rely on Berkman's actions without further inquiry. Third, EVI asserts that plaintiffs ratified the amendment because they knowingly acquiesced to its terms for seven months before challenging it.

We begin our analysis with a key provision from the statutes governing limited liability companies. ORS 63.140(2)(a) provides, in part:

> "Each manager is an agent of the limited liability company for the purpose of its business, and an act of a manager, including the signing of an instrument in the limited liability company's name, for apparently carrying on in the ordinary course the business of the limited liability company, or business of the kind carried on by the limited liability company, binds the limited liability company unless the manager had no authority to act for the limited liability company in the particular matter and the person with whom the manager was dealing knew or had notice that the manager lacked authority."

As such, ORS 63.140(2)(a) sets forth the statutory standard for determining if a manager's act in carrying on in the ordinary course the business of the limited liability company is binding on that company. If the manager had no authority in that particular matter and the third party knew or had notice of the manager's lack of authority, then the company is not bound.

■ ■ Determining whether a manager has authority requires us to look to the law of agency. Generally, a principal is bound by its agent's acts if the acts are within the scope of the agent's actual or apparent authority. *Kaiser Foundation Health Plan v. Doe*, 136 Or App 566, 573, 903 P2d 375 (1995), *adh'd to as modified on recons*, 138 Or App 428, 908 P2d 850,

*rev den*, 324 Or 394 (1996). Actual authority can be express or implied. *Wiggins v. Barrett & Associates, Inc.*, 295 Or 679, 686, 669 P2d 1132 (1983). Express authority is "that authority which the principal confers upon the agent in express terms." *Id.*

Plaintiffs' operating agreements each contain identical statements about the management and control of the companies.

"4.1  Management of Company

"(a)  The management and control of the Company and its business and affairs is vested exclusively in the Managing Member of the Company * * *. The Managing Member shall devote such time as reasonably is necessary to perform its duties under the [Operating] Agreement. The Managing Member shall have the authority to undertake all actions on behalf of the Company without the consent of the other Members, except to the extent expressly provided in this Agreement. No Member other than the Managing Member shall have the authority to bind the Company. Without limitation of the foregoing, the Managing Member shall have the right, without obtaining the consent of the other Members, to (i) invest the funds of the Company in the securities of one or more issuers and to negotiate the terms of such investment, (ii) to vote securities held by the Company, and (iii) to sell, transfer, assign, or otherwise dispose of securities held by the Company.

"(b)  Notwithstanding the foregoing, the Managing Member shall have no authority to (i) knowingly contravene this Agreement; (ii) knowingly do any act that would make it impossible to carry on the ordinary business of the Company, except as otherwise provided in this Agreement; or (iii) possess Company property or assign rights in specific Company property other than for a Company purpose.

"(c)  For greater certainty, no Member that is not the Managing Member * * * shall take part in the management or control of the Company's affairs, transact any business in the Company's name, or have the power to sign documents for or otherwise bind the Company. * * *

"* * * * *

"4.8  Right to Rely on Managing Member. Any person or entity dealing with the Company may rely (without further

inquiry) upon a certificate signed by the Managing Member as to any matter affecting the Company."

(Underscoring in original.) The operating agreements gave Berkman authority to exclusively manage and control the business and affairs of plaintiffs. His actual authority, expressly granted in the operating agreements, encompassed the ability to take action on behalf of plaintiffs without the consent of the members. The operating agreements also granted any third party the right to rely on Berkman's authority to bind plaintiffs without further inquiry. As such, at first blush it would appear that Berkman's act of executing the amendment was within the express authority granted to him in the operating agreements.

Furthermore, the loan agreement contained provisions that granted Berkman the authority to act on plaintiffs' behalf in connection with that agreement. The loan agreement specified that Berkman was designated as agent in regard to the loan agreement, and that

"the Agent shall have the right to take actions that may materially affect the rights or obligations of the Investors in question under this Agreement * * *. * * * [EVI] may rely upon any written instructions it receives from [Berkman] in regard to this Agreement, the Notes, and the Warrants * * * without separate or independent inquiry of the individual Investors, in question."

Plaintiffs, however, assert that Berkman's actual authority was limited in one of two ways: either the "letter agreements" that Berkman entered into with the concerned investors limited his authority to further obligate plaintiffs without approval of the concerned investors, or his authority was limited by his acts of self-dealing and his breach of the fiduciary duties he owed to plaintiffs.

■ We first examine the effect of the letter agreements. Plaintiffs contend that the trial court erroneously relied only on the text of the operating agreements and failed to consider other circumstances that existed at the time that Berkman entered into the amendment. Relying on various provisions in the *Restatement (Third) of Agency* (2006) and the law of agency in general, plaintiffs assert that they had the right to curtail Berkman's authority at any time, and that Berkman's

actual authority at the time of the amendment is defined by the circumstances that existed at that time, including Berkman's subjective belief as to the extent of his authority. They further maintain that, through the series of communications and letter agreements, Berkman agreed that his authority was limited, and that any new obligations required the approval of plaintiffs. From that, they conclude that Berkman lacked the authority to execute the amendment on plaintiffs' behalf.

We agree with the trial court that the letter agreements did not limit Berkman's authority to bind plaintiffs because Berkman did not enter into these agreements *with plaintiffs*. The letter agreements confirmed an understanding between Berkman and the concerned investors. However, the concerned investors were acting in their capacity as a group of individual investors, not as the funds. Under general principles of the law of agency, any agreement between Berkman and a subset of individual investors who were not acting as plaintiffs did not limit Berkman's actual authority. *Restatement (Third) of Agency* § 3.06 (2006) (noting that termination of an agent's authority may occur by agreement between the agent and the *principal* or a manifestation of revocation by the *principal* to the agent).

In fact, the September 2003 letter agreement eschews the legal effect that plaintiffs currently seek. It advises that "[Berkman] will remain responsible for the Funds to the same extent as in the past." Moreover, while the record shows that Berkman did at times comply with the letter agreements, it also demonstrates that the concerned investors and their attorneys understood and communicated to Berkman that the letter agreements did not limit Berkman's authority to act on behalf of plaintiffs. For example, e-mail communications between the concerned investors' attorney and a company in a separate investment deal state that

> "the investors committee has no right to control the investment of Fund monies. That is the power, right, and responsibility of the Manager of the Funds. Even if the committee or individual investors whom we represent wanted to do so, they do not have the right to cause the Fund II Manager— [Berkman]—to invest or not invest further in [third party].

Moreover, there are other Fund II investors whose interests we do not represent. All of the Fund investors are free to express their preference to [Berkman], but he ultimately is the only one with responsibility for any Fund investment decisions."

Furthermore, the stated understanding of the concerned investors is consistent with the terms of the operating agreements, which set out a specific process for Berkman's removal as manager. Under the operating agreements,

"Non-Managing Members holding not less than 66 2/3 percent of the total outstanding Percentage Interests shall have the right at a meeting duly called pursuant to Section 4.7 or written consent to remove the Managing Member in the event of fraud, misappropriation of funds, or other similar acts of misconduct involving dishonesty in connection with the Company."

Pursuant to the operating agreements, Berkman was removed in December 2004, but not before the amendment was executed.

Thus, the agreements purporting to limit Berkman's authority were ineffective to do so because they did not comply with the process set forth in the operating agreements. While the letter agreements may create an obligation that Berkman owed to the concerned investors, any breach of that obligation was between him and them, and it did not affect his authority to conduct business on plaintiffs' behalf.

■ Next, we address plaintiffs' contention that they were not bound by the amendment because Berkman breached his fiduciary duties to plaintiffs when he signed the amendment. Plaintiffs cite *Fine v. Harney Co. National Bank*, 181 Or 411, 182 P2d 379 (1947), and *Houck v. Feller Living Trust*, 191 Or App 39, 42-43, 79 P3d 1140 (2003), for the proposition that an agent cannot bind the principal in a matter in which his own interest conflicts with the duty he owes to the principal—particularly when the third party with whom the agent is dealing knew that the agent was breaching his duties.

Plaintiffs maintain that ORS chapter 63 conferred duties of loyalty, care, and good faith and fair dealing on Berkman, and that the operating agreements contained a

"standard of conduct" clause that explicitly required Berkman to act in accordance with those duties.[3] ORS 63.155(9)(b) - (c). Plaintiffs contend that Berkman breached the duties of loyalty, care, and good faith and fair dealing by executing the amendment without prior authorization from plaintiffs. In particular, plaintiffs allege that Berkman had a conflict of interest due to the following circumstances: that Berkman received money, warranties, and stock options from EVI that would have lost all value if plaintiffs foreclosed on EVI's assets; that Berkman had given substantial promissory notes to investors in his personal capacity that were at risk if plaintiffs foreclosed; Berkman had a written agreement with Wiita to share management fees, and it was personally more lucrative for Berkman if Wiita retained his salary from EVI; and that Berkman's personal investments in EVI were at risk because EVI was in poor financial shape. Plaintiffs claim that, given Berkman's self-interest in the success of EVI, he was required by the operating agreements to seek plaintiffs' approval before executing the amendment. Further, plaintiffs claim that, given Berkman's position with EVI, and Wiita's role as an investor in plaintiffs and CEO of EVI, knowledge of Berkman's conflicts was imputed to EVI.

Before considering whether Berkman owed certain duties to plaintiffs, and whether he breached those duties, we must determine if the remedy sought by plaintiffs for any such breach is available. That is, even if Berkman breached a duty to plaintiffs, can plaintiffs void the amendment? While the legal proposition is well established that an agent who breaches a duty to the principal is liable to the principal for any damages arising from that breach, *Restatement (Second) of Agency* § 401 (1958), it is not so clear that an agent's action that involves such a breach does not bind the principal.

Plaintiffs contend that *Fine* and *Houck* establish the principle that allows them to void the amendment based on

---

[3] A provision in two of the operating agreements stated:

"The Managing Member warrants and covenants with the Company and each of the Members, jointly and severally, to carry out its duties in accordance with the standard of conduct specified for managers of limited liability companies as set forth in the Act. The Managing Member shall not engage in any activities specified in the Act which are exempted from the indemnification which is otherwise allowed under the Act."

Berkman's breach. EVI, of course, counters that *Fine* and *Houck* are inapposite.

In *Fine*, the plaintiffs engaged in a private business transaction with an employee of a bank. 181 Or at 446. As a result of that transaction, the bank employee owed the plaintiffs money and gave the plaintiffs a personal check for the amount. The plaintiffs endorsed the check, and the employee accepted it for deposit in the plaintiffs' account after the bank had closed for the day. *Id.* at 446-47. It turned out that the employee's check was worthless, and he never made any record of the transaction in the bank's books. *Id.* at 447. Accordingly, when the bank failed several months later, the plaintiffs' account was short the money they believed that the employee had deposited. The plaintiffs filed suit, seeking the money from the bank under a theory of agency. *Id.*

The court ultimately concluded that, because the plaintiffs knew that the bank employee was personally interested in the transaction and was acting in "a dual capacity as principal and also as agent of the Bank[,]" the plaintiffs were charged with inquiring into the employee's authority. *Id.* at 450-51. Because the employee had no authority to receive deposits of his own checks absent explicit permission of the bank, and such permission was prohibited by the Federal Reserve Act, the plaintiffs could not recover from the bank for its employee's wrongdoing. *Id.* at 461-62.

*Houck* involved an action against a trust to foreclose on trust property that had been pledged as collateral for two personal loans from the plaintiff taken by the sole primary trustee's grandson, who held a durable power of attorney from the sole primary trustee. 191 Or App at 41-42. The plaintiff contended that the grandson had either actual or apparent authority to execute the notes in the trust's name and pledge trust property to secure the loans made by the plaintiff. *Id.* at 42. This court, after setting out general propositions of the law of agency, noted that a power of attorney is "strictly construed 'so as to exclude the exercise of any power which is not warranted either by the actual terms used or as a necessary or usual means of executing the authority' granted by the principal." *Id.* at 43 (quoting *Capps v. Mines Services*, 175 Or 248, 251-53, 152 P2d 414 (1944)). Because

nothing in the power of attorney expressly authorized the grandson to use the trust property for his own purposes, the grandson exceeded the scope of any authority that he might have had. *Id.* at 44. That conclusion led us to "the critical issue"—whether the plaintiff had actual notice or was otherwise aware of facts that would require her to inquire into the limits of the grandson's authority. *Id.* The record showed that the plaintiff was aware that the grandson used the loans for his own personal purposes, and we concluded that awareness of the grandson's self-dealing put the plaintiff on notice that she must inquire into the grandson's actual authority. Because she examined the power of attorney, and it did not expressly authorize the grandson to act for his own benefit, the plaintiff was aware that the grandson was exceeding his authority and she could not recover the trust assets. *Id.*

In neither *Fine* nor *Houck* did the fact that the agent breached a duty to the principal act to sever or limit the agent's authority. In *Fine,* the employee simply had no authority to receive deposits of his own checks, and it would have been illegal for the bank to authorize such an action. In *Houck*, the power of attorney did not authorize the actions of the grandson, and thus he acted outside the scope of the express authority granted in the power of attorney. These cases stand for the unremarkable proposition that, if a third party is aware that the agent is engaged in self-dealing in the transaction, the party must inquire into the agent's actual authority.

That basic proposition of the law of agency is reflected in the relevant statutory standard in ORS 63.140(2)(a)—the act of a manager binds the limited liability company "unless the manager had no authority to act for the limited liability company in the particular matter and the person with whom the manager was dealing knew or had notice that the manager lacked authority."

Therefore, under ORS 63.140(2)(a), even if we assume that Berkman owed plaintiffs the duties that they list, and even if we assume that he breached those duties, the question is still whether Berkman had the authority to act for plaintiffs. As we determined, Berkman retained the express authority to enter into the amendment. Plaintiffs took no

action to limit his authority, and there was no operation of law that stripped him of his authority to bind plaintiffs in the ordinary course of business. An extension of the terms of the loan agreement is within the ordinary course of business and was expressly contemplated by the terms of the loan agreement. So, even if knowledge of Berkman's alleged self-dealing was imputed to EVI, any inquiry by EVI could only lead to the conclusion that Berkman had authority to enter into the amendment on plaintiffs' behalf. Moreover, we also note that the operating agreements contained a provision that explicitly authorized third parties to rely on Berkman's authority without further inquiry.

Finally, we address the related, but distinct, conflict of interest issues raised by plaintiffs. As recounted above, plaintiffs alleged that Berkman had multiple conflicts of interest that limited his authority to act to amend the loan agreement.

ORS 63.130(2) to (4) set forth the general provisions governing conflict of interest situations in manager-managed limited liability companies.

"(4)   Unless otherwise provided in the * * * operating agreement, the following matters of a * * * manager-managed limited liability company require the consent of a majority of the members:

"* * * * *

"(h)   A transaction involving an actual or a potential conflict of interest between a member or a manager and the limited liability company[.]"

As the statute makes clear, a majority approval of the conflict of interest is required unless the operating agreement provides otherwise. In this instance, the operating agreements recognized the conflicts of interest that are alleged by plaintiffs. Specifically, the operating agreements state:

"Any Member or its Affiliates may engage independently or with others in other business and investment ventures of every nature and description and shall have no obligation to account to the Company for such business or investments or for business or investment opportunities. An 'Affiliate'

shall mean any person or entity controlling, controlled by, or under common control with the person or entity in question, whether through beneficial ownership of securities, exercise of management control, or otherwise. The Members acknowledge that each Member may own securities issued by or participate in the management of companies in which the Company may invest and that neither the other Members nor the Company shall have any claim or cause of action against such Member arising from such ownership or participation."

Accordingly, the type of conflict alleged here, where Berkman acted in his individual capacity as a board member and treasurer of a company in which plaintiffs invested, is authorized by the operating agreement, and ORS 63.130 does not apply.

Affirmed.